**ALICE L. HART and C. E. HART, her husband v. PEARL R. HELD, a single woman.**

5 So. (2nd) 878                                          En Banc
December 12, 1941          Rehearing Denied February 19, 1942

Metcalf & Finch, for plaintiffs in error.
Paty, Warwick & Mooney, for defendant in error.

PER CURIAM:

This case is here on writ of error from an order granting a new trial made and entered by the Circuit Court of Palm Beach County, Florida. The litigation arose from a collision of two automobiles at the intersection of Hunter Street and Georgia Avenue in the City of West Palm Beach on the first day of December, 1940.

It was alleged that Alice L. Hart was driving west of Hunter Street in said city and while crossing Georgia Avenue, defendant's station wagon, then being operated in a southerly direction on Georgia Avenue by the defendant's daughter with her knowledge and approval, negligently ran over, against or upon plaintiff's car, thereby causing it to turn over and as a result plaintiff sustained enumerated injuries, and that the injuries so sustained were the proximate result of the negligent operation of the station wagon owned by the defendant and driven by her daughter.

In another count of the amended declaration the same facts were alleged, but the husband claimed damages for money expended for doctors, medicine and hospital bills and the loss of his wife's society, services and consortium.

The defendant below filed pleas of not guilty and contributory negligence to counts 3 and 4 of the

amended declaration, and on these issues the evidence, under appropriate instructions, submitted to a jury, which returned a verdict of $8,000.00 for plaintiff-wife, Alice L. Hart, and the sum of $2,500.00 for the plaintiff-husband, C. E. Hart.

There was a motion for a new trial, and, after argument of counsel the lower court made and entered an order sustaining or granting the motion for a new trial on grounds, viz: (1) the verdict is contrary to the evidence; (6) the verdict is not in accord with the manifest weight of the evidence; (7) the verdict is not in accord with the justice of the case; (8) the jury failed to heed the charges of the court on the question of contributory negligence and returned a verdict contrary to said charges. From the order granting a new trial made and entered under the provisions of Section 4615 C.G.L., writ of error was taken and an appeal perfected to this Court, and it is here contended that the evidence adduced during the progress of the trial did not authorize or sustain the conclusions of the trial court for granting the motion for a new trial, as stated in grounds 1, 6, 7, and 8 of the motion.

A motion for a new trial is addressed to the sound judicial discretion of the trial court. Stronger showing is required to reverse an order allowing a new trial than one denying it. A legal presumption exists that the new trial was by the trial court properly granted. The only questions to be considered by this Court on this record are: grounds of the motion 1, 6, 7, and 8 *supra* upon which the lower court based its order in granting the motion (see Blue and Gray Cab Co. v. Lowe, et vir, 143 Fla. 129, 196 So. 425), and the appli-

cation thereof to the evidence adduced (see Gulf Coast Title Co. v. Walters, 125 Fla. 427; 170 So. 130).

The plaintiff-wife, Alice L. Hart, sustained injuries at the intersection of Georgia Avenue and Hunter Street when she was traveling west on Hunter Street and the defendant was traveling south on Georgia Avenue. Hunter is a stop street, while Georgia is a through avenue. Plaintiff approached Georgia Avenue from the east and stopped her car; and, after looking north and south on Georgia Avenue, and failing to see an approaching car from either direction, in low gear drove across Georgia Avenue and was struck by the defendant's car when she had driven a short distance on Hunter Street and west of the west line of Georgia Street. There is but little dispute as to the location of the Hart car when hit by the defendant's car. The driver of the defendant's car identified the point of impact and placed there at the letter "W" on a map admitted into evidence without objections. The defendant's car was driven by her daughter, Ethel Held, and at the time she was about 17 years of age. On the front seat of the station wagon driven by Ethel Held were a sister 15 years of age and their mother, the defendant Pearl R. Held. There witnesses testified that the station wagon in which they were riding at the time of the impact was traveling at a speed of about twenty-five miles per hour. On page 28 of the brief of the defendant in error is the following : "It is freely admitted that the accident took place on the west side of the intersection. This shows that the station wagon was being driven on the west side of Georgia Avenue, which is where it should have been."

On the northeast corner of the intersection of Georgia Avenue and Hunter Street existed at the time a growth of thick bushes and underbrush some 10 or 15 feet or more in height, thereby obscuring the vision of the approach of a car in a southerly direction traveling on Georgia Avenue. Plaintiff, Alice L. Hart, at this point drove further west on Hunter Street so this obstruction would not impair her vision for more than 150 feet north and south on Georgia Avenue. Alice L. Hart attempted to cross Georgia Avenue after looking north and south while at a stop on Hunter Street. Ethel Held testified that she saw the plaintiff on Hunter Street prior to her approach to the intersection and identified the place on the map where the plaintiff's car was situated at the time by the letter "Y". There is no dispute in the testimony as to the existence of the brush and undergrowth at this intersection, except as given by Miss Held in stating that she saw the approach of the car of plaintiff, Alice L. Hart, through the brush and undergrowth while driving south on Georgia Avenue. An ordinance of the City of West Palm Beach at this intersection gave the Held car the right of way, and likewise made it the duty of the plaintiff to stop on Hunter Street.

The testimony of the defendant and her daughters was to the effect that they were driving south on Georgia Avenue at the rate of 25 miles per hour at the time of the impact at the intersection; that their car "momentarily" stopped and rather than permit or allow it to remain in the center of the street and blocking traffic, it was driven south from the point of impact a distance of from 25 to 60 feet, when the right wheels rested on the west side of Georgia Avenue in the sand and the left wheels of the station

wagon were on the pavement of Georgia Avenue. It required a wrecker to remove the station wagon from the scene of the accident, because the right fender by the force of the impact was driven in and mashed around the right front wheel and the wheel would not turn. It is difficult to understand how this car, after the impact at the letter "W", could have been driven some 20 to 60 feet and come to rest with the wheels on the right side buried in the sand, when two hawsers were broken in an effort to drag it from this position and a wrecker was called to hoist and take it away.

There is no evidence to corroborate the driving of the car under its own power from point of collision to the place of rest some 20 to 60 feet away. The first aid rendered Alice L. Hart was by the occupants of the station wagon and a young Mr. Hayes, a 19 year old high school boy, who at the time of the collision, with his father, was at work 2½ blocks north and 150 feet west of the point of impact. Each heard the report and rushed to the scene and succeeded in extricating plaintiff from her car. The Hayes, father and son, heard the station wagon pass their place while they were working and shortly after it passed heard the report of the impact, and, knowing the distance was 2½ blocks, concluded that the defendant's car at the time of the impact was traveling at an excessive rate of speed, for immediately after it passed—"in a split second"—was heard a "terrible crash." It was their testimony that defendant's station wagon was 60 feet from point of impact and was identified by the numerals "LV" on the map of the intersection. Pencil marks show the wheel tracks from point of impact along on the inside of the curb of West Georgia Ave-

nue to where the station wagon came to rest. The defendant and two daughters testified that after the impact their station wagon "momentarily stopped" and the car, under its own power after the impact, was driven to point of rest.

It is difficult to reconcile this testimony with the conflicting testimony of Emil Auerbach, Zalman Nulman and Max Auerbach, defendant's witnesses, going to the scene and finding the right fender driven or mashed down on the front tire, and in their effort to tow it broke two hawsers, but after doubling the hawsers were able to tow it a few feet, and then called a wrecker. If this car was driven by defendant's daughter from point of impact to place of rest, the distance placed by the several witnesses, ranging from 20 to 60 feet or more after the collision, it is difficult to understand why the tire would not have been cut or blown out. The jury concluded that the car came to rest at this point after the impact and was not driven there by defendant's daughter. There is no corroborating testimony to sustain their testimony but the physical facts contradict it. The Hayes were on the scene immediately and saw the ladies emerge from the station wagon and saw the marks of the tires on the pavement made by the station wagon in direct line of course to the place of rest. It is a strong inference that the station wagon was travelling at an excessive rate of speed when the collision occurred. If the station wagon had been steered two or three feet east of the point of collision, the plaintiff would never have been struck. There was ample space within the lane so to do when driving south on Georgia Avenue.

The eighth ground of the motion for a new trial is: "The jury failed to heed the charges of the court on the question of contributory negligence and returned a verdict contrary to said charge." The controlling instructions on this point are viz:

"The ordinance of the City of West Palm Beach which have been put in evidence show that Georgia Avenue, which is a north and south street, is designated as a stop street. The ordinance gives the vehicles operating on a street of that sort the right of way over vehicles entering these streets from streets running in easterly and westerly direction.

It is the duty of a person coming in from one or from some side street, Hunter Street in this instance, a person driving an automobile, shall first come to a full stop at the line designated on said intersecting street if necessary to take a full view in both directions to ascertain whether there is any traffic approaching on said stop street. And that is the duty that rested upon Mrs. Hart in this particular case. . . . .

Greater care is imposed on a driver not having the right of way. If the car is approaching on the main road, the other driver must wait until it has passed, Georgia Avenue being a main road, unless a prudent person would have reasonable ground to believe the approaching vehicle, proceeding at a lawful speed, is so far distant from the intersection that he can safely cross. Even though one has the right of way, it remains his duty to exercise reasonable care to avoid collisions.

The driver on a side street should yield passage to the driver on the main street, if a collision is likely to occur. The burden is on the driver on the side

street to use reasonable care to ascertain likelihood of collision—a greater duty to avoid a collision rests on him. . . . .

Under the law, it is the duty of a driver of an automobile when approaching an intersection of a street or way having the right of way to maintain a look-out to see if another car is approaching, and such driver of the car not having the right of way must be vigilant in looking and is bound to notice a car approaching on the street on which the driver has the right of way. The driver of the car who does not have the right of way is required not only to look straight ahead but to look to each side and exercise ordinary and reasonable care to avoid a collision, and if such driver sees, or should see, if he has exercised reasonable care, an automobile approaching, primarily the duty rests upon the driver of the automobile who does not have the right of way and he must exercise that degree of care which is commensurate with the circumstances that the right of way is given to those who may meet at the intersection and the additional risk resulting from that circumstance."

Whether or not contributory negligence appears by direct testimony or by a fair inference from the plaintiff's testimony is a question of fact to be settled by a jury under appropriate instructions. Contributory negligence can or may become a question of law where undisputed evidence shows the plaintiff is guilty of negligence which contributed to the proximate cause of the injury. See: Atlantic Coast Line R. Co. v. McCormick, 59 Fla. 121, 52 So. 712; Christopher v. Russell, 63 Fla. 191, 58 So. 45, Ann. Cas. 1913C 564; G. Ferlita & Sons, Inc. v. Beck, 143 Fla. 509, 197 So. 340.

Does the evidence here adduced disclose a dispute or conflict on the question of contributory negligence to the cause of the plaintiff's injuries on the part of the plaintiff to be settled by a jury under appropriate instructions by the trial court, or does the evidence adduced during the progress of the trial conclusively show or establish contributory negligence by the action and conduct of the plaintiff at the intersection of the Avenue and Street and therefore as a matter of law it became the duty of the trial court to hold that because of this contributory negligence of the plaintiff she could not recover in light of the decisions supra? Our answer or conclusion to this question is, after a careful study and analysis of all the testimony adduced, that conflicts and disputes appear on the part of the plaintiff and the two Hayes on the one hand part and the defendant and her daughters on the other. The statement that defendant's station wagon was driven to point of rest under its own power after the impact is in contradiction with the three witnesses adduced by the defendant going on the scene and attempting to remove the station wagon and failed, which necessitated calling a wrecker. The car at point of rest corroborates the contention that defendant's car did not stop at point of impact but continued because of excesive speed to place of rest and this is corroborated by the testimony of the two Hayes as to the excessive speed of the car prior to the collision. These several disputes and conflicts were correctly submitted to the jury under appropriate instructions and the verdict returned should not have been disturbed for reasons or grounds numbered 1, 6, 7, and 8, supra.

It is settled law that if there appears in the record substantial competent evidence in support of the verdict rendered, the same should stand and the trial court is without authority at law to substitute his conclusions based on the evidence for the views and conclusions of the jury impanelled and sworn to try the converted issues of fact. It is true that a trial court may set a verdict aside and grant a new trial when it is shown that the jury was deceived as to the force and credibility of the evidence, or when the jury was influenced by considerations outside the record, but when no issue is involved but the sufficiency and the probative force of the evidence, the verdict should not be interferred with. It is error to grant a new trial when the verdict set aside is supported by the testimony appearing in the record and nothing can be accomplished except to have another jury review the cause. See Seaver v. Stratton, 133 Fla. 183, 183 So. 335.

The case of Motor Transit Co. v. Studstill, 129 Fla. 769, 176 So. 769, involved the negligent operation of a street car and a sudden and unexpected jerk which injured the plaintiff. The issues were submitted to a jury under appropriate instructions from the trial court and a verdict was rendered for the defendant company. The court sustained a motion for a new trial made by the plaintiff on the grounds: (1) the verdict was contrary to the evidence; (2) that the court erred in giving certain instructions; (3) the court erred in refusing to give certain requested instructions in behalf of the plaintiff. The challenged instructions given and those refused were a careful consideration of all the testimony adduced considered by this Court and found free of error and

disclosed that substantial competent testimony was in the record to support the verdict of the jury so set aside by the trial court. This court reversed the order granting a new trial and in part said (129 Fla. text page 772):

"The only questions to be considered by this Court are those involved in the order granting a new trial and the doctrine is established in this State that 'a strong showing is required to reverse' such an order. See Phillips v. Garrett, 109 Fla. 435, 147 South. Rep. 857; Gulf Coast Title Co. v. Walters, 125 Fla. 427, 170 South. Rep. 130; Miami Transit Co. v. Mowrey, 103 Fla. 840, 138 South. Rep. 481. The rule obtains in this State that where an order granting a new trial upon a motion which contains several grounds without stating in the order upon what ground the motion was granted the appellate court will assume it was granted upon the ground stated in the motion which justified the order. See G. Lloyd Preacher & Co. v. Sarasota Bay Hotel Co., 112 Fla. 432, 150 South. Rep. 590.

The doctrine also obtains in this State that there is a presumption of correctness in favor of an order by the trial court granting a new trial, but where the evidence requires the finding to be made which was made and a judgment upon such finding would be in accordance with law and the requirements of substantial justice in the cause, or where some set principle of law has been violated by the trial court in granting a new trial the appellate court will reverse such an order. Lockhart v. Butt-Landstreet, 91 Fla. 497, 107 South. Rep. 641; Phillips v. Lowenstein, 91 Fla. 89, 107 South. Rep. 350; S. A. L. Ry. Co. v. Wester, 94 Fla. 259, 114 South. Rep. 242; Wilhelm v. South Indian

River Co., 98 Fla. 970, 124 Sou. Rep. 729; Vining v. American Bakeries Co., 118 Fla. 572, 159 South. Rep. 670."

The case of Vining v. American Bakeries Co., 118 Fla. 572, 159 So. 670, involved the negligent injuries to an eighteen months old child. There was a verdict for the plaintiff, and a motion for a new trial containing forty-nine grounds was made. The trial court granted the motion on grounds: (1) Did the plaintiff's testimony, taken as a whole and subject to analysis as to reasonableness and logic, make out a case of actionable negligence? (2) Did the plaintiff's evidence, taken as a whole and viewed in the light most favorable to the plaintiff, establish that the plaintiff was permanently injured? (3) Was the verdict excessive? (4) Did the court err in giving its instructions to the jury? The record was examined in light of the grounds upon which the motion for new trial was sustained and this court reversed the order granting a new trial, and, speaking through Mr. Justice Whitfield, said:

" 'Where in law the evidence requires the finding to be as made, and a judgment on the finding would be in accord with the law and the requirements of substantial justice in the cause, the appellate court will reverse an order of the lower court granting a new trial, when the matter is appropriately presented.' Phillips v. Lowenstein, 91 Fla. 89, 107 So. 350.

'It is the duty of this Court to reverse an order granting a new trial when it appears from the record that no other verdict than that which was rendered could have been properly rendered under the pleadings and the facts as disclosed by the evidence.' S.A.L.R. Co. v. Wester, 94 Fla. 259, 114 So. 242.

Where the verdict of the jury was right under the evidence and there was no material error of law or procedure in the trial, an order made by the trial court granting a new trial, will be reversed by the appellate court. Feinberg v. Stearns, 56 Fla. 279, 47 So. 797."

The order granting a new trial is reversed and the cause remanded with directions to enter final judgment for the plaintiff below on the verdict, unless a motion in arrest of judgment or for judgment *non obstante veredicto* shall be made and prevail. See Secs. 4615 C.G.L.; Jackson Bros. Lbr. Co. v. Yaeger & McCaskill, 80 Fla. 611, 86 So. 500; Florida East Coast R. Co. v Davis, 96 Fla. 171, 117 So. 842.

It is so ordered.

WHITFIELD, BUFORD, TERRELL, CHAPMAN and ADAMS, JJ., concur.

BROWN, C. J., concurs in opinion.

Thomas, J., dissents.

BROWN, C. J., concurring:

It seems to me that, under the evidence in this case, the question of proximate cause was the vital question in the case, and that question is generally one for the jury to decide. Even if the plaintiff was guilty of some negligence, by entering and driving so slowly across a main street, where drivers thereon had the right of way, it would still be a question for the jury to determine whether the driver of defendant's car could or should (in the exercise of ordinary care) have seen plaintiff's perilous position in time to have avoided the collision. See Frazer v. Gillespie, 98 Fla. 582, 124 So. 6; Dunn Bus Service v. McKinley, 130 Fla. 778, 178 So. 865. So, I think the case was properly

submitted to the jury and that on this evidence, the jury's verdict should have been left undisturbed. While I hesitate to reverse an order of an able and conscientious circuit judge, granting a new trial, it appears to me that the order was erroneous.