Action by Herman B. White, Jr., against E. Levy Sons, a copartnership composed of E. Levy, Sam Levy and Max Levy, to recover the purchase price of wall showcases allegedly sold to defendants. Verdict for plaintiff and from an order granting a new trial, plaintiff appeals.
Reversed with directions.
The appellant, Herman B. White, Jr., instituted a common law action in the Circuit Court of Escambia County, Florida, against E. Levy Sons to recover the purchase price of six sections of wall show cases at the sum of $300.00 per section and in the total sum of $1800.00, alleged to have been sold by White to Levy Sons. There was a plea by the defendants below that they did not promise as alleged. The evidence of the parties in support of the issues made by the pleadings was submitted to a jury, who, after hearing argument of counsel and instructions by the trial court upon the law of the case, returned a verdict for the plaintiff-appellant in the sum of $1800.00.
The defendants-appellees filed a motion for a new trial and grounds thereof were: (1) the verdict was contrary to the evidence; (2) the verdict was contrary to the law; (3) the verdict was contrary to the law and the evidence; (4) the verdict cannot be reconciled with justice and the weight of the evidence; (5) the evidence fails to establish a meeting of the minds of the parties sufficient in law to show a contract of sale; (6) the following charge by the trial court tended to confuse the jury: In order that the plaintiff may recover he must prove by a preponderance of the evidence all the essential elements which entitle him to recover.
The trial court, after argument of counsel, set aside the verdict of the jury and entered an order requiring another jury to hear the evidence and decide the disputes and conflicts in the evidence, under appropriate legal instructions by the trial court. Pertinent here are the ground or grounds actuating the trial court in granting the new trial and his order is viz.: "This cause coming on to be heard upon the defendants' motion for a new trial, and the Court having heard the argument of counsel thereon, finds that the evidence is so highly uncertain *Page 143 
as to the making of a contract at all at a definite price, that on that ground only the verdict should be set aside, and another jury hear the evidence, it is therefore ordered and adjudged that the verdict be and the same is set aside and a new trial is hereby ordered."
Section 59.04, F.S.A., provides for review by the Supreme Court of an order granting a new trial by the trial court and the statute is, viz.:
"Appeal from order granting new trial. Upon the entry of an order granting a new trial, the party aggrieved may, without waiting for final judgment, prosecute an appeal to the proper appellate court, which, if the cause be reversed, may direct that final judgment be entered in the trial court for the party obtaining the verdict, unless motion in arrest of judgment or for judgment non obstante veredicto be made and prevail".
On appeal here to review an order granting a new trial the only questions to be considered are those involved in such order. Dunnellon Phosphate Co. v. Crystal River Lumber Co., 63 Fla. 131, 58 So. 786. The scope of review on appeal from an order granting a new trial is limited to the questions involved in the motion for a new trial and the order granting it. Vining v. American Bakeries Co., 118 Fla. 572, 159 So. 670.
The trial court expressed his view, incorporated in the order granting a new trial, to the effect that the evidence adduced by the plaintiff-appellant to establish a contract of sale to the defendants-appellees of the six sections of wall show cases, at the time of the trial were in possession of the defendants-appellees and situated in a store building at 127-129 South Palafox Street in the City of Pensacola, Florida, at the sum of $300.00 per section, aggregating the sum of $1800.00, was so "highly uncertain" that "another jury should hear the evidence." The conclusion of the trial court must be considered in light of the evidence adduced by the parties at the trial.
It is not disputed that the plaintiff-appellant owned during the years 1947 and 1948 six sections of wall show cases situated in a store building owned by plaintiff's father, his brothers and sisters, located at 127-129 Palafox Street, Pensacola, Florida. The defendants-appellees entered into a written lease in 1947 of the store building for a period of one year at a rental of $500.00 per month, with an option to renew the lease for $600.00 per month. The defendants-appellees declined to sign the written lease for the store unless they could retain in the building the six sections of wall show cases owned by the appellant. The appellant entered into a verbal rental agreement of the show cases with the appellees for the sum of $75.00 per year, but the plaintiff retained the right to sell at any time the six sections of show cases and refund to the appellees the unearned rental of the $75.00 by him received. The appellant testified that he told Mr. Max Levy that he wanted $300.00 per section for the six sections of show cases and the conversation occurred prior to the time of their lease for the store building.
The appellant advertised for sale in a local newspaper the six show cases and some other cases not in the building, and a prospective purchaser therefor called at his place of business during the month of May, 1947. The appellant was unable to give the purchaser's name, description, nationality or place of residence. Mrs. Oresa Sumler, an employee of the appellant, testified that a purchaser came to see Mr. White and wanted to buy the show cases. She heard Mr. White tell the prospective purchaser "that he gave Mr. Levy first choice, and if he didn't take them for him to come back later". The fellow left and Mr. White left the office to see Mr. Levy.
Pertinent testimony of Mrs. Oresa Sumler is viz.:
"Q. You were in there when Mr. White went to see Mr. Levy? A. Yes.
"Q. Did Mr. Levy come to the shop then? A. Yes, he came to the shop later, and he told Mr. White he would take the cases, and could not pay for them right then, and he would pay for them in one year. The man came back later and Mr. White told him.
"Mr. McLane: Object to what Mr. White told a third party. *Page 144 
"The Court: Overruled.
"Q. Was there anything said about the price of the cases, in the talk between Mr. White and Mr. Levy? A. I didn't hear.
"Q. You just heard him say he would take them, but he would have to pay for them within a year? A. Yes."
Mr. Henderson, a carpenter or cabinet maker, was employed to do some work in the store by the appellees and in part testified as follows:
"Q. In the course of your work did it become necessary to do something in connection with six big show cases that were there, show cases that stood against the wall, for showing suits, hats and things? A. Yes, sir.
"Q. State to these gentlemen what Mr. Levy wanted you to do with these show cases, and what conversation you had with him about them. A. The only thing I had any conversation with him concerning that, he wanted me to take those cases out from in the wall there and build what you would call door-step shelves, commencing down here from the floor. There were two of them he wanted taken out and build in there. I knew that the store didn't belong to them, so I didn't know whether to tear out those things without getting permission from Mr. White, and he told me it would be all right to go ahead and taken them out, that he had bought them, or was making arrangements to buy them."
Thus it will be observed that Mr. Max Levy was told by the appellant that the price of the show cases was $300.00 per section and there is no dispute about the number of sections. Mrs. Sumler testified that Mr. Max Levy, in May, 1947, came to the appellant's place of business, where she was employed in the capacity of seamstress, and heard Mr. Max Levy tell the appellant that he (Max Levy) "would take the cases and could not pay for them right then and he would pay for them in one year". Mr. Henderson heard Mr. Max Levy say that he (Max Levy) "had bought them (meaning the show cases) or was making arrangements to buy them". It is quite true that the above testimony was disputed by the appellees and their witnesses. It appears to the writer that disputes and conflicts in the testimony, under our judicial system, present jury questions and courts are powerless to substitute their views and conclusions for those of the jury.
In the case of Hart v. Held, 149 Fla. 33, 5 So.2d 878, we held that where the verdict of the jury was right under the evidence and there was no material error of law or procedure in the trial, an order made by the trial court granting a new trial will be reversed by the appellate court. It is error for the trial court to grant a new trial when the verdict set aside is supported by the testimony appearing in the record and nothing can be accomplished to have another jury review the cause. Likewise, in Albert v. Miami Transit Co., 154 Fla. 186, 17 So.2d 89, 90, we said: "This Court approved the rule that in cases where nothing is involved but the sufficiency of and the probative force of the evidence, the trial court is under no circumstances, warranted in pitting his judgment against that of the jury."
It becomes our duty in the administration of the law to reverse the order granting a new trial, with directions to the Court below to enter a judgment on the verdict for the plaintiff below.
Reversed.
ADAMS, C.J., and SEBRING and HOBSON, JJ., concur. *Page 145