102 So.2d 842 (1958)
GRAND ASSEMBLY OF LILY WHITE SECURITY BENEFIT ASSOCIATION, Inc., a Florida corporation, Appellant,
v.
NEW AMSTERDAM CASUALTY CO., a New York corporation, Appellee.
No. 27.
District Court of Appeal of Florida. Second District.
May 14, 1958.
*843 Henry O. Wilson and William T. Fussell, Tampa, for appellant.
*844 Shackleford, Farrior, Shannon & Stallings, Tampa, for appellee.
SMITH, FRANK A., Associate Judge.
This is an appeal from an order granting a motion for new trial. The appellant was the plaintiff below and the appellee was the defendant.
The appellant sued appellee on a policy of insurance and obtained a verdict and judgment on April 3, 1957. The appellee moved for new trial on six grounds, the grounds material to this appeal being the following:
"2. That the verdict is contrary to the evidence.
"4. That the evidence is insufficient to support a verdict for the plaintiff.
"5. That the verdict for the plaintiff is against the manifest weight of the evidence."
On May 9, 1957, the court entered an order granting the motion for new trial on the above listed grounds and denying it on the other three grounds.
The plaintiff then took this appeal. There is an application by appellant for the allowance of attorney's fees on the appeal.

Statement of the Facts
It appears that the appellant operated an ambulance which had been dispatched from the Lily White Hospital to the Tampa Municipal Hospital blood bank to obtain blood for a woman who was being operated on at the time in the Lily White Hospital. This ambulance was involved in an accident while on this trip. The result was a suit against the appellant in which a judgment was recovered against and paid by appellant.
The appellee had issued a bodily injury and property damage liability insurance policy on the ambulance. It was a "pleasure and business" policy and not commercial. It carried the following endorsement:
"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability and for Property Damage Liability with respect to the automobile classified as `commercial (invalid carriage)' does not apply while the automobile is used for emergency purposes."
The appellant knew of this endorsement when the policy was purchased. The appellee refused to defend the above suit or to pay the judgment, contending that the accident occurred while the ambulance was being used for emergency purposes. So appellant sued to recover its losses.
Because of the endorsement upon the policy that it should not apply to liability while the automobile was used for emergency purposes, it was incumbent upon plaintiff to show that it was not being so used. In effect plaintiff had the burden of establishing a negative, which is generally a more difficult matter of proof. By proving that it was used for pleasure or business (and it was classified as commercial), and how it was so used, a case could be made out negativing its use for emergency purposes.
Bronson being the person who used the vehicle his evidence is most material as to how it was used, whether for emergency purposes or not. For a consideration of the question whether it may have been presented to Bronson as an emergency and that he acted accordingly to meet it we will review his testimony as set forth in the order by the trial judge, as follows, to-wit:
The plaintiff's driver, one Bennie E. Bronson, testified on direct examination for the plaintiff that he was driving at the time of the accident about 20 to 25 miles an hour and at the time had his siren sounding and his red lights flashing. He testified that he had the siren and red flashing lights on only as a precautionary measure and that he was not in a hurry. The following questions were propounded to the witness *845 and he gave the following answers on cross examination:
"Q. Isn't it a fact you were on what you considered to be an emergency trip? A. Was it for me to decide an emergency?
"Q. Weren't you so acting? A. I didn't have no knowledge of an emergency. My estimation of an emergency concerning sickness, I think it is all an emergency.
"Q. Did you believe you were on an emergency trip at the time of this accident? A. No.
"Q. I want you to look at this exhibit, marked `Defendant's Exhibit 1 for Identification'. Do you recognize your signature there? A. I do.
"Q. Did you sign that? A. I did.
"Q. Do you remember giving it to this gentleman seated over here Fred Bender? A. No sir.
"Do you remember giving it to whoever came to see you? A. I gave it  I don't remember to whom.
"Q. Didn't you say this in your statement `On Friday October 2, 1953 I was driving a 1946 Cadillac ambulance belonging to the Lily White Hospital. This is the ambulance I have driven since I began working for them. At about 12:45 I was involved in a collision with a truck at the corner of Lake and 22nd Avenue in Tampa, Florida. At that time I was on an emergency call for blood to be used in an operation.' Did you not in fact say that and sign your name to it? A. I signed my name to that paper but I didn't say it was a '46 Cadillac, I said it was a '47.
"Q. All I want to know  A. (Interrupting) No, sir, I didn't give that statement.
"Q. Did you sign your name to it? A. That's my signature.
"Q. Did you read it? A. No, sir.
"Q. Was it read to you? A. I don't remember.
"Q. Do you usually sign your name to things you don't know what they are? A. Sometimes I do.
"Q. Is that what you're saying here? A. That's what I'm saying."
The order commented that Bronson admitted signing the statement which defendant offered in evidence without offering any explanation of the inconsistency between it and his testimony from the witness stand.
The only other evidence offered by defendant and tending to show the existence of an emergency was the testimony given by Andrews, President of plaintiff corporation, at a previous trial in which he had testified that Dr. Toretta said he had to have it right away (referring to blood Bronson had undertaken to obtain and deliver).
I believe the parties are in agreement that the foregoing is a correct recitation of the evidence as to Bronson's part in the transaction.
The testimony of Dr. Toretta, the surgeon who performed the operation, is to the effect that there was no emergency for the procurement of blood for patient. When he ordered it at 10:30 he expected to have it in two or three hours to administer. According to hospital record it was given at 12:30 and 1:30, although Bronson testified accident occurred at 12:45 while he was en route to hospital with blood. Testimony fairly shows that Dr. Toretta did not consider any emergency existed.
Nurse Thompkins and anesthetist Scott testified to procedure customarily followed to procure blood in an emergency which included calling a motorcycle cop, and she says that a motorcycle cop was not called.
Neither nurse Thompkins nor anesthetist Scott could give much useful information, none as to why the ambulance was used or *846 who gave the order to Bronson to go for the blood. They testified as to the usual procedure followed at the hospital for obtaining blood particularly for an emergency. Otherwise, their testimony is entirely inconclusive.
Even though no emergency existed and Dr. Toretta did not consider there was one and notwithstanding that no motorcycle cop was called to go for it appellee contends that still the use by Bronson of the ambulance might have been for emergency purposes. The fact that he was forbidden to use it except for transporting patients does not preclude his having used it for emergency purposes. We must consider his action in the use of it under the circumstances and determine whether it was competent evidence for a finding by the jury that the use was for emergency purposes or not.
The eminent trial judge expressed his opinion that the verdict was not in accord with the manifest weight and probative force of the evidence hence he could not reconcile it with the justice of the case and the manifest weight of the evidence and he must grant the motion for new trial.
Since essentially the granting of the motion was based upon the premise that the verdict was not in accord with the manifest weight of the evidence we need to consider what constitutes the manifest weight of the evidence.
The only definition the writer has found is in the pronouncement by the Appellate Court of Illinois, first in the case of Schneiderman v. Interstate Transit Lines, Inc., 331 Ill. App. 143, 72 N.E.2d 705, 706, in which it was declared that "manifest means clearly evident, clear, plain, indisputable". This same rule was reiterated and consistently followed in a number of decisions by the Illinois court, which are cited in 26 Words and Phrases, Manifest Weight of Evidence, in Cumulative pocket part. These decisions are all to the effect that in order to disturb a verdict it must be "against the manifest weight of the evidence" and that is one of the well recognized grounds approved by our Court but our Court has approved granting motions for new trial if the verdict is not in accord with the manifest weight of the evidence. It should be noted that the ground of the motion was that the verdict was not "in accord with the manifest weight of the evidence".
The Court has not been furnished and has discovered no satisfactory definition of the phrase "used for emergency purposes" as applicable to this case.
The only reference I have found is the case of State v. Getty, 207 La. 89, 20 So.2d 546, dealing with the term "emergency purposes" in a tax statute and which is of no assistance in this instance.
We believe the trial judge gave a correct interpretation of the law as expressed in a charge to the effect that it was not necessary that an actual emergency should exist if the sitution as presented to the driver was one of emergency and he used the vehicle in a manner calculated to respond to the emergency altho subsequent events show that no emergency actually existed.
After a careful study the Court is of the opinion that the evidence was such that the jury was warranted in believing it and finding a verdict thereon that he was not using it for emergency purposes. He avers that he did not have any instructions except to go get the blood and denies that he was in a hurry and his conduct in driving at a moderate rate of speed of 20 to 25 miles per hour is entirely consistent with the idea of absence of emergency and his statement of his disbelief of any emergency.
It is our conclusion that there is substantial competent evidence to support the verdict so that it should stand and that the trial court should not substitute its conclusions based on the evidence for the views and conclusions of the jury. *847 Hart v. Held, 149 Fla. 33, 5 So.2d 878, 882, in which the Court further stated:
"It is settled law that if there appears in the record substantial competent evidence in support of the verdict rendered, the same should stand and the trial court is without authority at law to substitute his conclusions based on the evidence for the views and conclusions of the jury impanelled and sworn to try the controverted issues of fact.
"It is true a trial court may set aside a verdict and grant a new trial when it is shown that the jury was deceived as to the force and credibility of the evidence, or when the jury was influenced by considerations outside the record, but when no issue is involved but the sufficiency and the probative force of the evidence, the verdict should not be interfered with. It is error to grant a new trial where the verdict set aside is supported by the testimony appearing in the record and nothing can be accomplished except to have another jury review the cause."
Upon appellant's application for attorney's fees for prosecuting this appeal, no authority for such an allowance has been cited. The only citation is contained in appellee's supplemental brief in opposition to the application. We deem the cited case of Metropolitan Life Insurance Co. v. Jenkins, 153 Fla. 53, 13 So.2d 610, as being decisive on the point in cases of appeal. Under the statute authorizing such allowance in a common law case it is to be ascertained by the jury, and makes no other provision for same.
This application must be and is hereby denied.
While the Court is always reluctant to reverse a trial judge upon his ruling granting a new trial and is even more reluctant because of the long experience and splendid ability of the judge who tried the case below, yet upon our finding that he acted improperly in granting the motion we must reverse his order and direct that judgment be entered upon the verdict as rendered.
Accordingly, the order is reversed.
KANNER, C.J., and ALLEN, J., concur.