107 So.2d 264 (1958)
Charles W. CLOUD, Appellant,
v.
Donald FALLIS, Appellee.
No. 185.
District Court of Appeal of Florida. Second District.
June 27, 1958.
Rehearing Denied July 22, 1958.
Shackleford, Farrior, Shannon & Stallings, Vernon W. Evans, Jr., Tampa, for appellant.
McEwen & Cason, James M. McEwen, Tampa, for appellee.
STEPHENSON, GUNTER, Associate Judge.
This is an appeal from an order granting a new trial after a jury verdict for defendant in a wrongful death action. Donald Fallis had sued Charles W. Cloud after defendant's car struck plaintiff's three year old son, fatally injuring the child. Defendant appeals.
Plaintiff filed suit September 14, 1956, joined by his wife. On November 13, 1956, an amended complaint was filed by plaintiff alone, alleging the wrongful death of plaintiff's three year old son in that defendant had negligently operated his car and had, as a result, struck and fatally injured the boy.
Defendant answered the amended complaint by denying negligence and by alleging contributory negligence on the part *265 of plaintiff and plaintiff's wife in permitting their son to loiter, play, and go back and forth across the involved street unattended.
Trial was had June 6 and 7, 1957, resulting in a jury verdict for defendant. On June 10, 1957, plaintiff filed a motion for new trial upon three grounds: (1) The verdict was contrary to the law applicable, (2) The verdict was contrary to the heavy preponderance of the evidence, and:
"3. The Jury disregarded the testimony concerning the speed of defendant's car, the application of the Last Clear Chance Doctrine, and enforced a responsibility upon the plaintiff for the care and supervision of his minor child, which is contrary to the laws and dicisions (sic) affecting this type of case."
The trial judge granted plaintiff's motion by order dated and filed August 6, 1957, as follows, omitting formal parts:
"The case involves the death of a three-year-old boy who was killed by the defendant while the child was in the process of crossing the street immediately in front of his parent's home.
"The defendant filed a plea of contributory negligence in the answer and denied that the death of the child was due to any negligence or carelessness on his part. The contributory negligence in the allegation of the answer was due to the fact that the plaintiff and his wife, Geraldine Fallis, the parents of the child, carelessly and negligently permitted and allowed the said minor child to loiter and play in and about the said street.
"The motion for the new trial is based upon the claim that the verdict was contrary to the heavy preponderance of the evidence; that the jury disregarded the testimony concerning the speed of the defendant's car; also disregarded the application of the Last Clear Chance Doctrine and enforced a responsibility on the plaintiff for the care and supervision of the minor child, contrary to the laws and decisions affecting this type case.
"I am mindful of the fact that in Florida questions of negligence and contributory negligence are largely matters to be decided by the jury. At the same time, in this case, it is my opinion that the verdict of this jury is contrary to the manifest weight of the evidence and while, as stated above, our courts have delegated to the jury the duty of deciding those questions of negligence and contributory negligence, at the same time I think the greater weight of authority in Florida has never been shown to be other than that if the Judge who heard the case questions that the verdict is contrary to the manifest weight of the evidence, it is his duty to grant a new trial. The evidence in this case showed conclusively, in my opinion, that the defendant in this case was negligent by going through a thickly populated area, which he knew had in it many children, at a rate of speed which the evidence showed was in excess of the speed limit. Therefore, the jury must have gone on the theory that the parents contributed to the death of their child in such a way as to avoid recovery and must have applied to these parents a greater measure of responsibility than the law requires. It is therefore,
"Ordered, Adjudged, and Decreed that the motion for a new trial be and the same is hereby granted.
"Done and Ordered in chambers at Tampa, Hillsborough County, Florida, this 6th day of August, A.D., 1957."
Notice of appeal was filed September 24, 1957.
*266 The accident occurred at about 6:30 P.M., July 19, 1956, on Oklahoma Avenue in Tampa. Defendant was driving east on Oklahoma at about 30 miles per hour. The weather was clear, the street was dry and there was adequate light. The scene of the accident was in a small subdivision in which the houses were well back from the street. Defendant had a clear view and knew that a number of children lived in the subdivision through which he passed. As defendant reached the 4400 block, he saw a child running across the street from south to north, that is, from defendant's right to his left, about 40 feet in front of defendant's approaching car. Defendant applied his brakes, and his car skidded. The left front fender struck the boy, who was thrown about 17 feet from the final resting place of the car. The car wheels laid down about 48 feet of skid marks. The child died shortly after the accident.
Just prior to the accident, the boy had eaten supper with his parents and maternal grandparents. He had then left the house. Neither the parents nor grandparents knew where he was going, but all apparently assumed he was going to play in his own yard on his "gym set". The child was 3 years and one month old at his death.
The only person who actually saw the accident and all the events immediately preceding was defendant. A next door neighbor of plaintiff, one Reynolds, was in his front yard from where he saw the child on the sidewalk, looked away and then looked back in time to see the child flying through the air. The child's grandfather looked out plaintiff's front window in time to see defendant's car striking the boy.
The parties stipulated that the speed limit was 25 m.p.h. and that the accident caused the child's death.
The writer of this opinion perceives an area of doubt in the rules by which a trial judge is bound while considering motions for new trial based upon the justice or injustice of a verdict in light of the effect or weight of all the evidence. It may be more proper to say that the doubt lies in the rules by which an appellate court should bind itself while reviewing such trial judge's actions with regard to such motions.
The questions raised by this appeal were approached with the knowledge that this case was indeed a close one. The facts, above outlined only briefly, are such that one might readily admit a trial judge could properly grant or could just as properly deny plaintiff's motion for new trial. This explains why the outline of fact is brief and why the "area of doubt" mentioned is presently so significant.
Perhaps the first case in Florida dealing with the question at hand was Shultz v. Pacific Insurance Co., 1872, 14 Fla. 73. In that case the Supreme Court stated:
"The verdict of the jury here is founded on the evidence of facts, complicated and contradictory, which required an investigation into the character and credit of the witnesses, whose testimony it was necessary to compare and weigh. To do this is the proper function of a jury. 1 Brevard, 150; 2 Stranges, 1,142; 2 Burr, 665; 1 Wils., 22; 1 Burr, 396, 609; Cowp., 37; 2 Wils., 249; 3 Wils., 47.
"While it is true that this is the proper function and province of the jury, it is at the same time true that in cases where there is conflict in the testimony it is within the province and power of the court to set aside a verdict which does not reach a substantially just conclusion in cases where the conflicts are of such character and the circumstances of such nature as to give just ground for the belief that the jury acted through prejudice, passion, mistake or any other cause which should not properly control them. This power exists in the court. In exercising it the court does not encroach upon the province of the jury for the reason that it does not conclusively *267 settle facts in the form of a verdict, but only gives another jury the opportunity of so doing, and of correcting what appears to be a mistake. If this is not properly within the power of the court, then the result is that the first twelve men that happen to constitute a jury in a given case are by law the final arbiters of the facts in that case. There is no such principle of law.
"This is a conservative and justly prized power of the court; like all powers it may be abused. It is much better, however, that exceptional cases of its improper exercise should be endured than that the security which it affords should be withdrawn. The rule which should govern a court in the exercise of this power should be a fair view of the justice of the particular case, the character of the conflicting testimony, and the surrounding circumstances, rather than an extraordinary degree of respect for the maxim ad questionem facti non respondent judices ad questionem legis non responddent juratores  and wherever it appears to the court that there is difficulty in reconciling the verdict with the justice of the case, and the manifest weight of evidence, there the court should not, from a too great respect for this wise and venerable maxim, withhold its power. This is the rule which should govern the judge of the court presiding at the trial, who has the same opportunity as the jury to observe what occurs in the trial. In all cases of appeal the presumption is that he exercised this discretion properly and the case is not presented to this court as it was to him, because this additional presumption is added to the verdict. Where he has declined to disturb the verdict of the jury, a very clear and strong case must be made out before this court would feel justified in reversing his action. It should be a very plain case to justify an appellate court in setting aside this concurrent conclusion of both court and jury, upon the ground that their action was contrary to the evidence or weight of evidence."
The above rule remained substantially unchanged until about 1937, in which year the Court decided Seaver v. Stratton, 1937, 133 Fla. 183, 183 So. 335. In that case the Court seemed to limit the trial judge's discretion somewhat, though the "broad discretion" of the trial judge is specifically mentioned. Then in Hart v. Held, 1941, 149 Fla. 33, 5 So.2d 878, 882, the Court said:
"It is settled law that if there appears in the record substantial competent evidence in support of the verdict rendered, the same should stand and the trial court is without authority at law to substitute his conclusions based on the evidence for the views and conclusions of the jury impanelled and sworn to try the controverted issues of fact. It is true that a trial court may set a verdict aside and grant a new trial when it is shown that the jury was deceived as to the force and credibility of the evidence, or when the jury was influenced by considerations outside the record, but when no issue is involved but the sufficiency and the probative force of the evidence, the verdict should not be interfered with. It is error to grant a new trial when the verdict set aside is supported by the testimony appearing in the record and nothing can be accomplished except to have another jury review the cause. See Seaver v. Stratton, 133 Fla. 183, 183 So. 335."
Then the Court decided Martin v. Stone, Fla. 1951, 51 So.2d 33, using stronger language than in the Hart case, above, and citing the Seaver case, above. See, also, Poindexter v. Seaboard Air Line R. Co., Fla. 1951, 56 So.2d 905; Martin v. Sussman, Fla. 1955, 82 So.2d 597. These cases all seem to state and re-emphasize the rule that a trial judge who grants a new trial will be reversed if the sole, apparent result *268 is to have another jury consider the same facts, or to put it another way, if the apparent reason for the trial judge's action is that he disagrees with the jury. The ultimate of this development in the rule appears expressed in Jordan Furniture Company v. Goggans, Fla. 1958, 101 So.2d 114, 116. In that case the Court said:
"We note from the order of the trial judge granting the new trial that he was of the view that the verdict was contrary to the manifest weight and probative force of the evidence with specific reference to the fact that in his view it affirmatively appeared that the truck driver was guilty of negligence. * * *
"Although it is true there were conflicts in the evidence, it appears to us from an examination of the record that the weight and probative force of the evidence did not so clearly and obviously preponderate in favor of the appellee that it would justify a judicial determination that it was manifestly in her favor. We think that the record presented a typical jury question. We recognize that an order of a trial judge granting a motion for a new trial is accorded a strong presumption of correctness because of the broad discretion allowed to him in his review of the case in the light of his direct contact with the trial. However, it is our view of the instant case that although it may be said that the truck driver was guilty of some negligence it cannot be concluded as a matter of law that his negligence, such as it was, necessarily constituted a proximate cause of the collision.
"We must, therefore, hold that the order granting the motion for new trial is reversed with directions to enter a judgment on the verdict of the jury." (Emphasis added.)
Yet, in other cases, the Supreme Court has apparently required a trial judge to grant a new trial where that judge has actually admitted he disagreed with the jury verdict but that under the "substantial competent evidence" rule, he did not feel justified in granting a new trial. In Turner v. Frey, Fla. 1955, 81 So.2d 721, the trial judge's order was quoted, in part, as follows:
"`The evidence adduced was in direct conflict, the plaintiff giving one version of what happened and the defendant, bolstered by the testimony of two other witnesses, gave a version entirely at variance from what was set up in her [the plaintiff's] testimony. I am free to say that had I been on the jury in this case, I would have found a verdict for the defendant, as both the physical facts and the corroborating testimony show that the matter could not have happened as was claimed by the plaintiff, but the jury chose to believe the plaintiff, and as I understand the rule, the Circuit Judge, even on a Motion for a New Trial, does not have the power to substitute his opinion of the facts for the opinion of the jury as expressed in the jury's verdict.
"`* * * As I understand the rule with reference to a motion for a directed verdict, if there is any evidence upon which a jury can find a verdict for the plaintiff, it would be error to direct a verdict against the plaintiff. There was certainly evidence in this case upon which the jury could find the verdict which they did find. It would therefore have been error, in my opinion, to have directed a verdict for the defendant, either at the time it was made, or at this time, and even though I feel that the verdict of the jury is not a correct verdict, I cannot say that I think it was rendered purely as a matter of sympathy, and consequently, although I am in disagreement with the verdict, the rule which prevents me from substituting my opinion for the jury's opinion requires me in this case to deny the Motion for a New Trial.'"
*269 The Court then held as follows:
"Since the trial judge found, and we agree, that `There was certainly evidence in this case upon which the jury could find the verdict which they did find,' it was not error to refuse to direct a verdict in defendant's favor under the rule stated in Talley v. McCain, 128 Fla. 418, 174 So. 841, 842, that `The court should never direct a verdict for one party unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law.' But, as pointed out in the Talley case, supra, `* * * although a motion for a directed verdict for one party may be denied, yet in the same case if the trial court is of the opinion that the verdict does not accord with the manifest weight of the evidence and the substantial justice of the cause, a new trial should be granted.' * * *
"We think that there can be no doubt that the trial judge in the instant case had the view that the verdict was not in accord with the manifest weight and probative force of the evidence. In these circumstances, it was his duty to grant the defendant's motion for a new trial. * * *" (Emphasis added.)
The duty of a trial judge in these cases has been discussed in a recent decision of this court, Grand Assembly of Lily White Security Benefit Association, Inc., v. New Amsterdam Casualty Co., Fla.App., 102 So.2d 842. However, that case dealt with a problem involved in, but not determinative of the present case, that is, the definition of "manifest weight of evidence."
While trying to locate the boundaries of a trial judge's discretion recognized by all the cases, the writer of this opinion must frankly confess that there appears to be, among the cases above mentioned, clear authority to affirm the trial judge in the present case and authority just as clear to reverse. The former cases seem to admit of a broader discretion of the trial judge as regards the evidence presented during trial before him than do the latter. Particularly is this true of the "close case", as we have presently before us, and it is in such cases that we perceive persuasive need for a clear cut statement of that discretion. Juries, and admittedly judges, are human and therefore, sometimes are prone to err or misunderstand when faced with the relative complexities of the law, rights, duties, and other abstractions so essential to the goal sought in every court room  justice. Unfortunately, the saddest results of such errors or misunderstandings come about in cases where they may not appear upon the cold record on appeal, no matter how clear they might have been to the trial judge who saw and heard everything the jury saw and heard.
Resolution of this problem is simplified by a concise statement outlining our duties as regards that problem, found in Pyms v. Meranda, Fla. 1957, 98 So.2d 341, 343. There the Court said:
"In our consideration of the scope of review available to the Circuit Judge, sitting as an appellate court, we feel that the Circuit Judge was bound by the same rules which we apply to this court in reviewing orders of trial judges granting new trials. In innumerable decisions we have consistently held that trial courts are allowed a very broad and liberal discretion in the matter of granting new trials. In Duboise Const. Co. v. City of South Miami, 108 Fla. 362, 146 So. 833, this court went so far as to state that the decision of a trial judge in granting a new trial will seldom be reversed by an appellate court. With equal consistency we have stated that inasmuch as a motion for a new trial is addressed to the sound judicial discretion of the trial judge, his decision to grant a new trial will not be disturbed unless there is a clear showing of an abuse of the discretion available *270 to him. We think these rules particularly applicable when an appellate court is asked to review an order granting a new trial. In Kight v. American Eagle Fire Ins. Co. of New York, 131 Fla. 764, 179 So. 792, we held that a stronger showing is required to reverse an order allowing a new trial than to reverse one denying it. We have also held that when a trial judge is of the view that a verdict fails to comport with the manifest weight of the evidence it is actually his duty to grant a new trial even though he had properly denied a motion for a directed verdict. Turner v. Frey, Fla. 1955, 81 So.2d 721.
"In the instant case the Judge who presided at the trial heard all of the evidence, viewed all of the witnesses and was in a prime position to give consideration to the credibility of those who testified and the relative weight to be accorded their testimony. After all of this direct contact with the actual trial of the cause, the trial judge reviewing the matter in retrospect on the motion for new trial was of the opinion that the jury acted through sympathy or mistake, that its verdict was contrary to the manifest weight and probative force of the evidence and the justice of the cause and that the verdict was contrary to applicable law.
"We have examined the record of the trial and after such examination we cannot conclude that the trial judge abused the sound judicial discretion which was his to exercise under the circumstances. On the contrary it is our view that he was in a much better position than an appellate court to pass on the ultimate correctness of the jury's verdict. Under the circumstances here shown we think the Circuit Judge as an appellate court committed error by invading the discretion that was available to the trial judge. In so doing he deviated from the essential requirements of the law to the injury of the petitioner Pyms."
With the last quoted statement firmly in mind, we conclude that the action of the trial court here involved was proper. In so doing, we answer the troublesome thought that, had we been in the trial judge's place, we might not have ruled the same way by recalling that "he was in a much better position than an appellate court to pass on the ultimate correctness of the jury's verdict." Pyms v. Meranda, supra.
Affirmed.
KANNER, C.J., and ALLEN, J., concur.