**JACKSONVILLE EXPRESSWAY AUTHORITY v. BENNETT, et al (No. 2).**

**No. 27153-L.**

Circuit Court, Duval County.

July 30, 1959.

Jones & Foerster, Jacksonville, for petitioner.

Chester Bedell, Jacksonville, for owners of parcel 1.

Walter G. Arnold, Jacksonville, for owners of parcel 2, 2(a) and 2(b).

Claude K. Slater and Thomas H. Greene, both of Jacksonville, for owner of parcel 4.

WILLIAM H. MANESS, Circuit Judge.

This cause was argued before the court on July 29, 1959, on the respective motions of the owners of parcels 1, 2, 2(a) and 2(b) for a new trial. The original petition for condemnation and the Declaration of Taking filed simultaneously on December 19, 1958, sought to acquire for the Jacksonville Expressway Authority, hereinafter referred to as "petitioner", several parcels of land located in Duval County for the expressway system. The petitioner and the owners were able to agree on "just compensation" on all parcels except three, to-wit—parcel 1, owned by certain Broward heirs, represented by Chester Bedell, Esq.; parcel 2, 2(a) and 2(b), owned by Grace Gertrude Broward, represented by Walter Arnold, Esq.; and parcel 4, owned by Dard, Inc., a corporation, represented by Claude Slater, Esq. and Thomas H. Greene, Esq. Dard, Inc. and petitioner do not complain of the jury verdict but the owners of parcel 1 and parcel 2, 2(a) and 2(b) set forth a number of alleged errors which they contend require the granting of a new trial by this court as to such parcels.

In disposing of these contentions, it is necessary to detail certain facts appearing from the record and testimony herein pertaining to parcel 2, 2(a) and 2(b). On December 11, 1958 one J. Alvin Regis-

ter, Jr. made an appraisal of the land later described as parcel 2, 2(a) and 2(b), and gave to petitioner his opinion of $74,175 as the fair market value of the part taken plus damages to the remainder. Later, and after March 9, 1959, he changed that opinion, but the exact date and amount of the new opinion is not disclosed. The necessary resolution of the condemning authority was adopted December 16, 1958, and the petition and Declaration of Taking were both filed December 19, 1958. In the Declaration of Taking, the petitioner, pursuant to the requirements of State v. Wingfield (Fla. DCA1), 101 So. 2d 184, stated that the sum of money estimated by the petitioner "as just compensation" for the taking of parcel 2 (which included 2(a) and 2(b)) is $72,750. The good faith of this estimate was not challenged so it was deemed accepted as having been so made by Grace Gertrude Broward. A court-appointed appraiser was named, made his report finding the value of the parcel to be $74,201, and double that amount was placed on deposit after which petitioner became vested with the title to the parcel on January 20, 1959. By order filed February 4, 1959, the owner of the parcel was permitted to withdraw from the funds on deposit the sum of $60,000.

As the case progressed, counsel for the owner of the parcel attempted to learn, by written interrogatories and pre-trial discovery depositions, the opinion of petitioner's expert real estate appraisers, but upon hearing the objections of petitioner and its motion to quash depositions, this court denied the owner the desired discovery by order filed May 6, 1959, 14 Fla. Supp. 169.

The cause was first set for trial at the request of the petitioner to begin on June 1, 1959, but likewise on motion of the petitioner, the cause was on May 19, 1959, re-set for trial beginning July 6, 1959. At the pre-trial conference on July 19, 1959 (see order of June 22, 1959), petitioner asked leave to amend its legal descriptions and by order dated June 26, 1959, it was permitted to do so, and such amended descriptions, amended petition, as well as an Amended Declaration of Taking, were filed on June 29, 1959. Such amended descriptions did not in any appreciable degree change the quantity or location of the land already taken and petitioner's estimate of "just compensation" remained at $72,750, but was broken down as follows—parcel 2, $70,850; parcel 2(a), $950; parcel 2(b), $950.

The jury was chosen and the trial began on July 6, 1959. After the testimony as to parcel 1 was closed (which parcel will hereafter be discussed), the petitioner called as its one and only expert real estate appraiser one Richard Hamilton, who, though he was first requested to make an appraisal about February of 1959, testified that his appraisal was not completed until 1 P.M., July 4, 1959, and

his figure of $51,500 was not given to counsel for petitioner until July 6, 1959, the day the trial began. Upon conclusion of his testimony on direct examination, counsel for the owner of parcel 2, 2(a) and 2(b), in the absence of the jury, moved the court to strike the entire testimony of the witness, Hamilton, on the grounds that the petitioner was estopped to put on any testimony less than its estimate of "just compensation", made in good faith. Counsel for petitioner, in opposing such motion, stated that it had no other witness on whom it wished to rely and moved to amend its estimate of "just compensation". Both motions were denied by the court for reasons stated in the record.

Upon the conclusion of the trial, the testimony and the jury's verdict thereon may be tabulated as follows—

| Parcel | Petitioner's Estimate* | Petitioner's Expert | Owner's Expert | Verdict | Attorney's Fees |
|--------|----------------------|---------------------|----------------|---------|-----------------|
| No. 1 | $40,300 | $27,000 | $ 64,300 | $30,116 | $3,100 |
| No. 2 | $72,750 | $51,500 | $129,620 | $57,970 | $3,400 |
| No. 4 | $27,150 | $29,950 | $ 45,200† | $37,498 | $3,000 |

\* Estimate of just compensation, as amended June 29, 1959.
† Highest of three experts called by owner.

Careful consideration of each of the several grounds urged in the motion for a new trial as to parcel 2, 2(a) and 2(b) leads this court to the conclusion that, except as to the amount of the verdict, the trial as to this parcel was and is as free from error as counsel and the court can expect to achieve in such a lawsuit. Prior to and during the 6-day trial, counsel for both parties vigorously asserted every conceivable procedural and evidentiary advantage possible, and there is no reason to believe that the rights of either the owner or the petitioner were violated in any appreciable degree. Even as to the amount of the verdict, it was between the lowest and highest figure testified to by the expert witness called by each side and conforms to the charge of the court. But the court is in fact shocked by the low verdict of $57,970; in view of the petitioner's *good faith estimate of "just compensation"*, which estimate was based on the opinion of a competent appraiser and allowed to stand unmodified from December 19, 1958, to July 9, 1959, the fourth day of the trial, without the first suggestion to the court or counsel that petitioner had in fact abandoned such estimate; or that the appraiser had

changed his opinion subsequent to March 9, 1958. Such facts did not become known until counsel for the owner made a motion to strike the opinion of the appraiser, Hamilton—who was more than $20,000 under the $72,750 estimated in good faith to be just compensation.

Of course, under the Wingfield decision, supra, this estimate is not presentable to the jury for any purpose and so it cannot be said to have been considered or ignored by the jury in their deliberations. But this court feels it has some responsibility in seeing that the owner receives "just compensation" as contemplated and required by the constitution of Florida; and, under the circumstances of this case, that petitioner's *estimate of just compensation, made in good faith,* must be treated by the court as an admission against interest. In this case, the owner could not and did not have any way of knowing that the petitioner would contend at the trial that "just compensation" should be fixed by the jury at only $51,500. The prejudice to the owner by such lack of knowledge, indeed the actual misleading of the owner and her counsel by failure to make a timely motion to amend, is readily apparent when consideration is given to matters which influence settlement negotiations. Furthermore, who is in a better position to estimate in good faith what sum is "just compensation" than the petitioner, who has gone into possession, begun its construction and so changed the physical character of the land taken and so affected the remainder that the usual view of the property was necessarily denied the jury? Under such circumstances, it ill behooves petitioner to now contend that its estimate of just compensation made in good faith—as late as seven days before the trial began—should not be regarded by counsel for the owner as significant in discharging his responsibilities to the owner.

Counsel for petitioner argues that the *estimate* of just compensation made in good faith is only an *estimate* and that it is not bound thereby; that it is a guide to this court in making disbursement to the owner of funds on deposit. This argument is supported by the Wingfield decision, but that is not its only significance. "Just compensation", as used in the Wingfield decision, must be construed to meet the requirements of the constitution so that petitioner's good faith estimate of "just compensation" must mean more than mere "guesswork" or "pulling a figure out of the air"; and, if it means anything, it means *the sum of money the petitioner in good faith admits should be paid the owner as just compensation.* Any different construction would render such estimate meaningless, notwithstanding the provision of section 74.07, which permits the court to disburse "on account of just compensation" the sum of money set forth in the Declaration of Taking. Under the construc-

tion contended for by the petitioner (without reference to the 1959 amendment to section 74.07), neither the court nor the owner can know with any degree of certainty what monies should be disbursed, spent or reinvested if such estimate is "only an estimate", having no other significance and being subject to revision at any time. In adopting the construction hereinabove set forth, this court finds support for such construction in the 1959 amendment to section 74.01, chapter 59-450, which adds to section 74.01 the following—

" . . . and there shall be attached thereto the *petitioner's estimate of value*, such estimate to be *based upon a valid appraisal*, made in good faith, on each parcel in the proceeding." (Italics added.)

This new language apparently changes not only the holding in the Wingfield case, but is a departure from the use of the words "just compensation" in section 74.01 but not in section 74.15 and perhaps gives to such estimate the meaning contended for by counsel for petitioner. But its significance in this case lies in the fact that the legislature recognizes a distinct difference between an estimate of "just compensation" and a mere "estimate of value . . . based on a valid appraisal, made in good faith . . . ". Such amendment, even if applicable to this case, cannot alter this opinion because it cannot, ipso facto, alter the language of the Declaration of Taking herein.

Having indicated thus far as to parcel 2, 2(a) and 2(b) that the trial was without appreciable error and that no bias or improper motive operated on the minds of the trial jurors, but that the verdict is shocking to the court and ought not to stand under the circumstances herein outlined, this court is in a position similar to that of the district judge in U. S. v. Kennesaw Mountain Battlefield Ass'n., 99 Fed. 2d 830, decided by the Circuit Court of Appeals, Fifth Circuit, November 14, 1938, certiorari denied by U. S. Supreme Court, 83 L. Ed. 1045. In that case, the district judge had admitted in evidence in a condemnation proceeding, over the owner's objection, two tax returns purported to have been made by the owner returning its property for county taxes at $8,750. The jury returned a verdict for $9,000 and on motion for new trial, the trial judge held there was no error in the admission of the returns or the trial but that he "was disappointed with the amount of the verdict" which was but little more than the tax value and too cheap. Thereupon, he granted a new trial unless the condemning authority should within 30 days file a written consent that the verdict be written up to $16,000, and that judgment be entered thereon; in such latter event the new trial would be denied.

In approving the action of the district judge, the opinion of the fifth circuit held—

"As to the additur and its effect, he [the trial judge] held, that there was no error in the trial; that the owner had no legal right to any more than the $9,000 which the jury in an errorless trial gave him; that he could, without depriving the owner of any right, have overruled the motion unconditionally; that he did not conclude that the jury had acted with bias or from any wrong motive, but felt that he had some responsibility for seeing that a just compensation was fixed; and though there was ample evidence to sustain the verdict, he attempted to and did obtain the consent of the condemnor to an additional amount. He thought then and still thinks there could be no complaint of this; the condemnor could not complain of the additur, because it had consented to it; the owner could not complain of it, because, there being no ground for a new trial, the addition to the verdict was in his favor."

—99 Fed. 2d 833.

This court adopts the theory of the Kennesaw case, supra, and reasons that under the authority of Cloud v. Fallis (Fla.), 110 So. 2d 669, it has a broad discretion in the granting or denying of the motion for a new trial; that the trial was without appreciable error and that the jury did not act with bias or any other improper motive but that the verdict is shocking to the court; that this deficiency can be cured by the consent of the petitioner to an additur, about which the owner cannot complain because her motion could be denied unconditionally and if petitioner consents, it cannot complain.

Therefore, this court holds as to parcel 2, 2(a) and 2(b), unless the petitioner files its written consent to an additur to the verdict of $14,780 and the entry of a judgment of $72,750 in favor of Grace Gertrude Broward within thirty days from the date hereof, said motion for a new trial as to parcel 2, 2(a) and 2(b) will be granted, and a new trial will be ordered.

Having disposed of the motion as to parcel 2, 2(a) and 2(b), this court now will consider the motion for a new trial as to parcel 1. Here, we have an estimate of just compensation made by petitioner in good faith of $40,300, and a verdict of $30,116, approximately 25% or $10,184 less. The principal difference in the legal position which the owners of parcel 1 find themselves in is that no motion was made during the trial to strike the testimony of the appraiser, Hamilton. But neither has there been any motion by petitioner to amend its estimate of just compensation set forth in the Declaration of Taking as to parcel no. 1. These differences this court considers unimportant in light of the great disparity between the verdict and the sum of money estimated by petitioner in good faith to be just compensation. As in the case of parcel 2, 2(a) and 2(b), the trial was as free from error as it could be, the verdict was not induced by

16

any improper motive or influence operating in the minds of the jurors but it is nevertheless shocking to the court and will not be allowed to stand unless within thirty days from the date hereof petitioner files its written consent to the entry of an additur to the verdict as to parcel 1 of $10,184, and a judgment of $40,300 in favor of the owners of parcel 1. In the event no such consent is filed, the motion will be granted and a new trial ordered.

This opinion does not hold that it is improper for petitioner to put on its lowest possible appraiser, any more than this court would undertake to prevent the owner from putting on the highest appraiser it can find. These rights are secured to the parties by the very nature of judicial proceedings which are necessarily "adversary". However, this opinion does hold that the award of "just compensation" is a judicial responsibility, and where, as here, a review of all the circumstances leads to the conclusion that the verdict is shocking to the court, even though within the testimony, a court may require, as a condition to denying a motion for a new trial, the payment of petitioner's estimate of just compensation. (See also O'Conner v. Papertsian, 309 N.Y. 465, 131 N.E. 2d 883, 56 A.L.R. 2d 206, and annotation thereon beginning at page 213.)

It is accordingly ordered and adjudged that final disposition of the motions for a new trial as to parcel 1 and parcel 2, 2(a) and 2(b), be, and the same is hereby, continued until 9:30 A.M., August 31, 1959, at which time all interested parties are hereby notified to be present.