131 So.2d 740 (1961)
Florence Vivian BENNETT et al., Petitioners,
v.
JACKSONVILLE EXPRESSWAY AUTHORITY, a corporate agency of the State of Florida, Respondent.
No. 30990.
Supreme Court of Florida.
June 28, 1961.
Rehearing Denied July 24, 1961.
*741 Walter G. Arnold and Bedell, Bedell & Dittmar, Jacksonville, for petitioners.
David W. Foerster, Jacksonville, for respondent.
THOMAS, Chief Justice.
The petition for certiorari was based on the claim that there was a direct conflict of the decision of the District Court of Appeal, First District, which reviewed the judgment of the Circuit Court of Duval County in a condemnation action, with the decision of this court in the case of Cloud v. Fallis, Fla., 110 So.2d 669. The present procedure is authorized by the provisions of Sec. 4, Art. V, of the Constitution as amended, effective 6 November 1956, F.S.A.
Several months prior to the trial the respondent had acquired two tracts of land under the provisions of Chapter 74 of the Florida Statutes, F.S.A., preliminary to the exercise of its power of eminent domain. In furtherance of its plan the respondent secured the services of two professional appraisers to fix the value of the land to be taken and the amount of the damage to the adjoining property. Eventually one of these appraisers set the total amount of value and damage relevant to one tract at $74,175 but evaded a reply about the value and damage with reference to the other tract. However, the declaration of taking contained the assertion that just compensation for the tracts, respectively, would be $40,300 and $72,750.
Next, the court appointed an appraiser who reported that in his opinion the sum of the value of the first tract and damage would be $47,755, and of the second $74,210. Then the court entered an order that upon deposits of twice these amounts the petitioner, respondent here, should possess a fee simple interest in the properties for the purposes detailed in the original opinion not necessary to be delineated here.
Later, upon petition of the owner of the more valuable tract, the court ordered paid to her the sum of $60,000. After a futile attempt by this owner to take the deposition of the persons thought by her to have made the appraisals for the respondent, and after the court granted permission to the respondent to amend both its original petition for condemnation and declaration in order more accurately to describe the property affected, the respondent represented in the amendments the amounts required for full compensation to be $40,300 and $70,850 respectively.
Upon the cause proceeding to trial, the respondent produced the second one of its appraisers who then testified that full compensation for the first parcel would be $27,000 and for the second parcel $51,500. At that point, according to petitioner's witness, the compensation should be reduced in the one case $13,300 and in the other case $21,250 below the figures stated in the original declaration which had been substantially repeated in the second, or amended declaration, and, of course, the variation in the figures, related to both *742 tracts, materially changed the range of the estimates with which the jury had to deal.
A witness for petitioners testified to the opinion that the value of Parcel No. 1 was $64,300 and the value of Parcel No. 2, $129,620.
This, roughly, was the situation when the jury returned verdicts for $30,116 for the taking of the one tract and $57,970 for the taking of the other, and it is believed the information will suffice as a background for the ultimate question, i.e., was the judge justified in granting the motion for new trial? It is significant that the amount of compensation for the second tract was $2,030 less than the sum received by the owner under the order of distribution.
A cursory examination of the observations of the circuit judge gives the impression that they were self-contradictory, but a close study of them confirms the view that they were harmonious, and that he was acting well within his power when he granted the motion for new trial by an order subsequently reversed by the District Court of Appeal, First District.
In his order the learned circuit judge, who had sat throughout the trial and who had conducted the proceedings preliminary to the trial, referred to the original appraisals on the bases of which the deposits had been made and on the strength of one of which the sum of $60,000 had been paid to one of the owners, a sum considerably in excess of the amount awarded by the jury. He recalled that upon amendment of the declaration there had been no appreciable change in the figures. In parallel columns he set out the appraisals of petitioners, the testimony of petitioner's and owner's experts, and the verdicts which demonstrated the disparities among the estimates presented by the parties and those accepted by the jury.
The judge stated that the verdict of $30,116, was within the range of $27,000 and $64,300, and the verdict of $57,970 was within the range of $51,500 and $129,620, which is obvious, though it should be remembered that the ranges were tardily disturbed by the introduction on respondent's part of evidence reducing the values from $40,300 to $27,000 and from $72,750 to $51,500. The judge commented that "the trial was as free from error as it could be" and that the jurors were not improperly motivated or influenced but he also said that the verdict was "nevertheless shocking to the court * * *." (Italics supplied.) He had much the advantage in his acquaintance, first-hand, with the trial, and when he became "shocked" by the outcome he was, in the opinion of this writer, conscience-bound to do exactly what he did, namely, grant a new trial. After all the owners' properties were being taken from them for public use and this cannot be done except full compensation is forthcoming under the fundamental safeguard found in both the State and Federal Constitutions, a protection the judge was duty-bound to secure to them.
A judge may struggle to conduct a trial that is fair and just and be certain in his mind that this has been accomplished yet become "shocked" in the end by the concluding verdict.
That the judge suffered "shock" not from any incident during the trial but from the amounts read from the verdicts is clear from the provisions of his order for he announced that the verdicts would fall unless by additur the amounts stated in them were raised to the exact amounts named in the original declaration and substantially repeated in the amended declaration.
Plainly, then, the trial judge felt that he could not condone the condemning authority's making representations as to values, taking owners' properties away  and beyond recovery  making no effort in the amended declaration to correct any errors as to values that had been discovered, and introducing in the trial testimony creating the material disparities.
It is true that there is a provision in Sec. 74.09, Florida Statutes 1957, F.S.A., *743 that the declaration of taking, amount of deposit and report of court appointed appraisers are not admissible in evidence or accessible to the jury but it is equally true that they were matters with which the judge was necessarily familiar, and he could well consider them when, as he reviewed the whole case in his own mind he determined whether or not he should approve the verdicts. Furthermore, he was weighing the rights of owners guaranteed by Sec. 12, Declaration of Rights of the Constitution of Florida, F.S.A., and Amendment V of the Constitution of the United States, against a rule of evidence established by legislative act.
The District Court of Appeal, First District, decided that the circuit judge was not "justified in concluding that his judicial conscience was shocked" but it seems to us that such a conclusion would be a bit difficult to draw from cold type inasmuch as conscience is the "ideas and feelings within a person that warn him of what is wrong." Thorndike-Barnhart Dictionary. It has also been variously defined as "inward knowledge, consciousness; inmost thought, mind * * * consciousness of right or wrong; moral sense." The Oxford English Dictionary.
In the opinion of the District Court of Appeal, First District, appears the phrase which had crept into the law with reference to the decision of motions for new trial when we in Cloud v. Fallis, supra, attempted to rescue from oblivion the rule that such matters were within the sound judicial discretion of the trial judge and were not to be gauged by the presence or absence of competent "substantial evidence." In the decision in the instant case we find this sentence: "The verdict in each instance was within the limits of the evidence and is supported by substantial competent evidence." Following is this language:
"The trial court should set aside a jury verdict only when it is apparent that it is not supported by substantial evidence in the record, or when it is apparent that the jury was influenced by prejudice, bias or other improper influence." (Italics supplied.)
We turn now to Cloud v. Fallis, supra, to see if there is complete harmony between that decision and the one of the District Court of Appeal in the instant case on the pivotal question of the rule which should guide a trial court in the determination of motions for new trial.
We observed in the cited case that there was brought into focus the question whether the so-called "`broad discretion' rule" or the so-called "`substantial evidence' rule" should obtain in judging the correctness of a ruling on a motion for new trial.
After discussing a few decisions appearing to adhere to the "substantial competent evidence rule," including Hart v. Held, 149 Fla. 33, 5 So.2d 878, cited by the District Court of Appeal, First District, in the present case, we announced, unequivocally we thought, adherence "to the early rule placing in trial courts broad discretion of such firmness that it [the ruling] would not be disturbed except on clear showing of abuse * * *." We elaborated on this announcement by reference to the close contact of the judge with the trial, his opportunity therefore better to understand the ultimate decision of the jurors. We stated that if the trial judge entertained the opinion that the verdict was against the manifest weight of the evidence it was his duty to grant a new trial. True, in the present case the judge did not say the verdict was contrary to the manifest weight of the evidence, but he did say the verdict shocked him and he indicated, in terms of money, the exact extent of the shock.
In the cases cited following the announcement we said that "[i]nasmuch as such motions are granted in the exercise of a sound, broad discretion the ruling should not be disturbed in the absence of a clear showing that it has been abused * * *" and that "[t]he burden to make error clearly appear is on the appellant."
*744 Reverting to the present case and re-announcing the rule in Cloud v. Fallis, supra, we conclude that there was no clear showing by the appellant that the circuit judge abused his discretion and that when the judge declared he was shocked by the amounts of the verdicts, he manifestly exercised without abuse the discretion vested in him.
Although we have referred to the additur ordered by the trial judge as indicating the extent to which he considered the verdict unjust, we do not recognize his authority to effectuate an increase in the verdict of the jury. See Sarvis v. Folsom, Fla. App., 114 So.2d 490; State Road Department of Florida v. Cox, Fla.App., 118 So.2d 668; Wohlfiel v. Morris, Fla.App., 122 So.2d 235.
We quash the decision of the District Court of Appeal, First District, so that the cause may proceed to a new trial in the circuit court instead of being concluded by entry of a judgment for the sum of the verdict and the additur.
TERRELL, HOBSON, ROBERTS and THORNAL, JJ., concur.
DREW and O'CONNELL, JJ., dissent.
DREW, Justice (dissenting).
The District Court of Appeal, First District, in its opinion in this case[1] clearly followed the rule prescribed by this Court in Cloud v. Fallis[2] and I think it was correct in the conclusion it reached to reverse the action of the trial judge in granting a new trial in this eminent domain proceeding. For this reason it is my conclusion that we have no jurisdiction to entertain these certiorari proceedings under the conflict theory.[3]
Conceding jurisdiction, however, I cannot agree with the disposition of the merits of the litigation as outlined in the majority opinion. The idea that a jury's verdict has no more sanctity than that afforded it by this opinion is as shocking to me as the learned trial judge said the verdict of the jury in this case was to him. Here the trial judge held that the trial of the case was as free from error as possible, that the jurors were not improperly motivated nor improperly influenced and that the verdict was within the range of the testimony as to value; nevertheless he granted a new trial solely on the ground that the verdict was shocking to him. This, to me, is a new concept in jurisprudence.[4]
*745 The same Constitution which provides that property owners are entitled to full[5] and/or just[6] compensation for property taken by the sovereign also provides that such compensation "shall be ascertained by a jury of twelve men in a court of competent jurisdiction, as shall be prescribed by law."[7] This Court has seldom, if ever, disturbed the verdict of twelve jurors in a condemnation action fixing the value to be paid the property owner where the amount of the verdict was within the range of the evidence and the trial was free of harmful error.[8] The cases are legion where there has been wide disparity between the high figure and the amount eventually awarded by the jury but seldom have these been disturbed.[9] The verdict of a jury of twelve men chosen from the body of the county to perform the constitutional duty imposed upon them admittedly "as free from error as could be," not motivated by any improper or undue influence, and clearly within the range of the evidence should be accorded greater dignity than to set it aside merely upon the reaction of the trial judge from evidence that would have been inadmissible[10] that the amount was shocking to him.
Moreover, it must not be forgotten that under the laws of this State the owner had the perfect right to accept the amount fixed in the court's appraisal and have avoided the necessity of a trial or any possibility of having to refund any portion of such estimate.[11] Instead of doing so, the parties in this case elected to proceed to trial. They should be bound by the verdict which this constitutional jury rendered.
On numerous occasions I have expressed my views concerning the rights of the landowner in proceedings of this kind. In almost every case where the question was at issue, I have upheld the rights of the landowner in such proceedings.[12] The rule, however, should be as broad as it is long. Where the landowner, having been afforded  as he has  full facilities for defending *746 these actions, elects to go to trial instead of accepting the amount of the appraisal fixed on his lands, he should be bound by the result of his own election in the absence of clear error or some other valid reasoning which would warrant an appellate court disturbing the verdict.[13]
I am also of the view that the majority opinion overlooks the fact that, in granting or denying a new trial the discretion to which this Court has always referred is a judicial discretion. It does not follow that because a judge may be shocked by a jury's verdict that his actions in setting it aside must necessarily involve the exercise of judicial discretion. His reasons for being shocked must be valid and, when properly questioned, sufficient to legally support his conclusion.[14]
For these reasons, I respectfully but firmly dissent. I conclude with the statement made in the beginning hereof that, in my judgment, the district court was entirely correct in its disposition of this cause.
O'CONNELL, J., concurs.
NOTES
[1] The opinion of the District Court is reported in 124 So.2d 307.
[2] Fla. 1959, 110 So.2d 669.
[3] Article V, Section 4(2), Rule 4.5c (6), 31 F.S.A.
[4] Breitbart v. State Road Department of Florida, Fla.App. 1959, 116 So.2d 458, 460 affirmed an award of an attorney's fee in condemnation proceedings which was only 12% of the evidentiary amount, the Court stating:

"Challenge of a verdict on the ground of inadequacy, on motion for new trial and on subsequent appeal, stands in exactly the same position as such a challenge" of a verdict for excessiveness. Radiant Oil Co. v. Herring, 146 Fla. 154, 200 So. 376; Allen v. Powell, 152 Fla. 443, 12 So.2d 378; 23 Fla.Jur., New Trial, § 61. A motion for new trial for excessiveness of a verdict (or for claimed gross inadequacy) will not be granted unless its excessiveness (or its inadequacy) may be shown and determined upon the record, or the amount is such as to shock the conscience of the court, or to indicate that the jury must have been influenced unduly by passion or prejudice, or that the jury misconceived the evidence, failed to consider essential elements of damage involved or to consider and decide issues submitted, misused the law as charged, or otherwise failed to discharge their duty as they were directed by the court. DeVane v. Bauman, 82 Fla. 346, 90 So. 192; De La Vallina v. De La Vallina, 90 Fla. 905, 107 So. 339; Elks Club of Tampa v. Adair, 95 Fla. 415, 116 So. 26; Wise v. Jacksonville Gas Corporation, Fla.App. 1957, 97 So.2d 704.
"The record in this case discloses a verdict for attorney fees which, in relation to the amount awarded to the owners, is smaller than customarily allowed in verdicts in eminent domain cases in this jurisdiction. But each case must stand on its own facts, and each case has a different jury. The amount of the verdict for attorney fees in this case is not such as to shock the conscience of the court. See Annotations 143 A.L.R. 672, 824; 56 A.L.R.2d 13, 191-193. The record affords no basis to imply that the jury was improperly influenced in any regard, or misconceived the evidence or law." (Italics supplied.)
[5] Constitution State of Florida, art. 16, Section 29.
[6] Constitution State of Florida, Dec. Rights, Section 12.
[7] Ibid, footnote 5.
[8] Illustrative cases are cited in profusion in 12 Fla.Jur. Eminent Domain (1957) and in 8 Fla.Law & Practice Eminent Domain (1958).
[9] The requirement that a jury cannot go outside the evidence in setting its verdict and must, therefore, set its verdict between the higher testimony as to value and low testimony as to value was firmly established in the case of Meyers v. City of Daytona Beach, 1947, 158 Fla. 859, 30 So.2d 354. A more recent decision is Dratch v. Dade County, Fla.App. 1958, 105 So.2d 171.
[10] See 124 So.2d 307 (text pages 309, 310, 311).
[11] Sections 74.03, 74.05, Florida Statutes (1957), F.S.A.
[12] Jacksonville Express. Authority v. Henry G. DuPree Co., Fla. 1958, 108 So.2d 289, 293, 69 A.L.R.2d 1445:

"The fact that the sovereign is now engaged in great public enterprises necessitating the acquisition of large amounts of private property at greatly increasing costs is no reason to depart from the firmly established principle that under our system the rights of the individual are matters of the greatest concern to the courts. The powerful government can usually take care of itself; when the courts cease to protect the individual  within, of course, constitutional and statutory limitations  such individual rights will be rapidly swallowed up and disappear in the maw of the sovereign. If these immense acquisitions of lands point to anything, it is to the continuing necessity in the courts of seeing to it that, in the process of improving the general welfare, individual rights are not completely destroyed."
[13] Similarly the appellant may not complain of action taken by the trial court on his own motion. Jones v. State, 1895, 35 Fla. 289, 17 So. 284. Also see 11 Fla.Jur.Sect. 17 Election of Remedies (1957).
[14] Weighed by the following quotation from Cloud v. Fallis, supra, footnote 2, the trial judge's action in granting a new trial (see the full narration of the facts in the opinion of the district court) was clearly an abuse of his judicial discretion:

"In an attempt to dispell this confusion about procedure of such importance, we will undertake to restate the law on the subject.
"When a motion for new trial is made it is directed to the sound, broad discretion of the trial judge, Poindexter v. Seaboard Air Line R. Co., Fla., 56 So.2d 905, Mead v. Bentley, Fla., 61 So.2d 428, who because of his contact with the trial and his observation of the behavior of those upon whose testimony the finding of fact must be based is better positioned than any other one person fully to comprehend the processes by which the ultimate decision of the triers of fact, the jurors, is reached, Pyms v. Meranda, Fla., 98 So.2d 341.
"When the judge, who must be presumed to have drawn on his talents, his knowledge and his experience to keep the search for the truth in a proper channel, concludes that the verdict is against the manifest weight of the evidence, it is his duty to grant a new trial, and he should always do that if the jury has been deceived as to the force and credibility of the evidence or has been influenced by considerations outside the record, Martin v. Stone, supra [Fla., 51 So.2d 33], Turner v. Frey, supra [Fla., 81 So.2d 721, 722], Myers v. Atlantic Coast Line Railroad Co., Fla., 86 So.2d 792; Florida Publishing Co. v. Copeland, Fla., 89 So.2d 18.
"Inasmuch as such motions are granted in the exercise of a sound, broad discretion the ruling should not be disturbed in the absence of a clear showing that it has been abused. Dent v. Margaret Ann Super Markets, Fla., 52 So.2d 130; Geffrey v. Langston Const. Co., Fla., 58 So.2d 698; Pyms v. Meranda, supra." [110 So.2d 673.]