JACKSONVILLE EXPRESSWAY AUTHORITY v. BENNETT, et al (No. 3).
No. 27153-L.

Circuit Court, Duval County.

June 21, 1962.

David W. Foerster, Jacksonville, for plaintiff.

Walter G. Arnold, Jacksonville, for defendant Grace Gertrude Broward.

WILLIAM H. MANESS, Circuit Judge.

This cause has been argued twice, and briefed by counsel, on three questions which have been raised by pleadings filed since the mandate of the District Court of Appeal, First District, was returned and filed in this court on July 26, 1961, to-wit —

(1) Whether or not the petitioner should be permitted to amend its petition for condemnation and declaration of taking so as to reduce its estimate of just compensation as to parcels 2, 2-A and 2-B from a total of $72,750 to a total of $51,300.

(2) Whether or not the petitioner should be permitted to amend its petition for condemnation and declaration of taking so as to relinquish and divest itself of the *limited access rights* which were acquired with the fee simple title to parcels 2-A and 2-B under the original petition, declaration and order of taking, as well as the amended petition, declaration and subsequent proceedings.

(3) Whether or not this court can and should permit Grace Gertrude Broward, the owner of parcels 2, 2-A and 2-B, to with-

draw and accept the amount fixed in the petitioner's estimate of just compensation " . . . *for* . . . *just compensation*" in accordance with her motion therefor (as suggested in the dissenting opinion by Justice Drew, concurred in by Justice O'Connell, in Bennett vs. Jacksonville Expressway Authority, 131 So.2d 740 at 745).

Review of the record herein shows that this condemnation proceeding began December 19, 1958. The petitioner became vested with the fee simple title to the land sought to be acquired, including limited access rights to portions thereof, on January 20, 1959, and has constructed a vital link of the Jacksonville Expressway thereon. The owners of all parcels involved have been paid full and just compensation, either by voluntary agreement or jury verdict, except Grace Gertrude Broward, the owner of parcels 2, 2-A and 2-B. For reasons previously detailed (15 Fla. Supp. 9), subsequent to a jury verdict as to said parcels, a new trial of the issue of what is full and just compensation to the owner of said parcels was granted by this court. Although the District Court of Appeal, First District, disagreed (124 So.2d 307), the order granting such new trial was affirmed (131 So.2d 740) by a holding of the Supreme Court that this court did not abuse its discretion by granting said owner a new trial under all the circumstances. Therefore, for the purpose of this order, the cause is presented to this court at this time in substantially the same posture as if the first trial had never occurred; except, and this must not be overlooked, that the order of this court denying to the owner the right to depose the petitioner's expert real estate appraisers is now known to be erroneous under later decisions of our Supreme Court.

Now, the owner is saying in effect, "I'll take the sum of money which the petitioner states is its estimate of just compensation *for* just compensation"; but, the petitioner is saying, "we are not willing to pay that amount now and we want to reduce our estimate of just compensation, even though it was *made in good faith,* to an estimate *based on a valid appraisal;* and, furthermore, we do not want all the rights *we have already acquired* in parcels 2-A and 2-B and insist on giving up our limited access rights over 2-A and 2-B before we are required to pay for them".

It may be that the owner was slow in electing to accept the petitioner's estimate of just compensation, but this should be no legal impediment if such right exists, particularly where, as here, the court denied the owner's right (now clearly established by Shell v. State Road Department, 135 So.2d 857) to discover the details of the petitioner's testimony as to just compensation prior to the actual trial of that issue. At this date, the owner knows

no more than she was entitled to know prior to the first trial; but, based on that knowledge, tardily gained, she is ready and willing to accept the petitioner's estimate of just compensation.

Under such circumstances, can the petitioner be heard to object? This court says, no! It was the petitioner who elected to proceed under chapter 74 of the Florida Statutes, take the owner's land before the value thereof had been determined and devote it to its own uses; it was the petitioner who, with its unfettered ability to make its own estimate of just compensation, using one or a hundred appraisers, arrived at the sum of $72,750 as its estimate of just compensation made in good faith as required by the constitution and laws of the state of Florida, as construed in the case of State v. Wingfield, 101 So.2d 184; and, it was the petitioner who made no move to amend or change this sum until it had actually put on testimony at the first trial some $21,250 below its said estimate. Furthermore, as contended by counsel for the owner, it is apparent that relying on petitioner's estimate of just compensation being made in good faith in the stated amount, the owner passed up the opportunity to exercise the procedural rights on which the very constitutionality of chapter 74 depends and no longer can this court perform its judicial function effectively as prescribed in the Wingfield case, supra. (See State Road Department v. Forehand, 56 So.2d 901.) Having remained silent when it should have spoken, the law will not now permit petitioner to speak and assert a different position. (See Davis v. Evans, 132 So.2d 476).

Counsel for petitioner cites and relies on the italicized language of Justice Hobson in Shell v. State Road Department, supra, to-wit —

"It must be borne in mind that in a condemnation proceeding the property of the land owner is subject to taking by the condemnor without the owner's consent. The condemnee is a party through no fault or volition of his own. Our Declaration of Rights, Section 12, Constitution of the State of Florida, makes it incumbent upon the condemnor to award "just" compensation for the taking. In view of this constitutional mandate, the awarding of compensation which is "just" should be the care of the condemning authority as well as that of the party whose land is being taken.

"*Unlike litigation between private parties condemnation by any governmental authority should not be a matter of 'dog eat dog' or 'win at any cost'*. Such attitude and procedure would be decidedly unfair to the property owner. He would be at a disadvantage in every instance for the reason that the government has unlimited resources created by its inexhausti-

ble power of taxation. Moreover it should be remembered that the condemnee is himself a taxpayer and as such contributes to the government's 'unlimited resources'."

But this language more accurately describes the position the owner finds herself in as she faces a second trial with an adversary who owns a toll expressway on land taken from her and now wants to change substantially its previous position on which the court and owner relied in the entry of the order of taking which divested the owner of her possession.

Petitioner's counsel lays great stress on the necessity of the proposed amendment to correct an alleged error, and asserts in his brief " . . . the details of which are completely and fully known by this Court". Judge Wigginton likewise seems to *assume* the existence of an innocent, obvious and understandable error in his critique of the opinion of the Supreme Court upholding the order of this court granting a new trial. (See Bainbridge v. State Road Department, 139 So.2d 714). However, neither the statement of counsel nor the assumption of Judge Wigginton is supported by the record herein, or by any "special knowledge" of this court, for the reason that nowhere is it shown that the petitioner's estimate of $72,750 was based *solely* on the opinion of J. Alvin Register, Jr., who made one of its appraisals of this property.

Not only is this not shown, but on the contrary there is an unexplained difference of $1,425 between the appraisal of Mr. Register and the estimate of petitioner; there is no showing at all as to what Mr. Register's opinion was when he obtained additional information after June 24, 1959; and, it is reasonable to infer that the opinion of *more than one appraiser* was considered by petitioner in arriving at its estimate of just compensation made in good faith and that petitioner actually had the benefit of and took into consideration appraisals made by other experts of the same and adjacent and other nearby properties, as well as knowledge gained from negotiated purchases, comparable sales disclosed by the public record and other sources. Furthermore, such inaccuracies in the maps or surveys as are shown by the record are vastly disproportionate to the reduction which petitioner seeks to make in its estimate. The truth is that the only changes made in such maps and surveys which bear any material relation to an appraisal of the property are (1) that the land taken was actually 25.84 acres instead of 28.02, as estimated by Mr. Register; and, (2) that the owner's remaining adjacent land out of which the 25.84 acres was taken is 103.68 acres instead of 29.73 acres. However, even if the ownership of the additional 75 acres

(adjacent to the 29.73 acres which Mr. Register assumed to be the remainder on which he computed severance damages) was overlooked by Mr. Register and petitioner prior to the filing of the petition and declaration of taking, such ownership was known to petitioner as early as April of 1959 as shown by defendant's exhibit no. 1, and in view of Mr. Register's assertion that he submitted his appraisal "subject to change", why was no action taken to "firm-up" Mr. Register's appraisal earlier than June 24, 1959? If this be "error", it cannot be attributed to inaccurate maps or surveys, but more appropriately should be called inexcusable neglect in failing to consult the public records, and the consequences thereof should not be charged to the owner — especially where the status quo cannot now be restored. To hold otherwise would render uncertain every step of the judicial process by which private property is taken for public purposes.

On the other hand, there is ample evidence in the record to deny the proposed amendment on the merits. The court appointed appraiser fixed his opinion at $74,210, and there is no showing that he failed to discover the extent of the owner's remaining adjacent property. The appraiser for the owner fixed his opinion of value at $129,620. Another appraiser, one Frank Fuss, also made an appraisal for petitioner of parcels 2, 2-A and 2-B, but his opinion as to value is not shown. So, the true basis of petitioner's original estimate of just compensation is not shown, nor is any reasonable necessity for such change clearly shown.

The petitioner's duty to state its estimate of just compensation to the owner under chapter 74 cannot be met by adopting its lowest appraisal as its estimate of just compensation and, in the absence of clear and convincing evidence demonstrating the necessity therefor, petitioner cannot amend its estimate of just compensation as a matter of right, if at all, after it has taken possession of the condemned property. Under the circumstances here presented this court is firmly of the opinion that petitioner is estopped to amend as it seeks to do, either as to its estimate of just compensation or to restore unwanted rights already taken. (See Houston Texas Gas & Oil v. Hoeffner, 132 So.2d 38).

But, even if this conclusion is unwarranted, the desired amendments must be refused because under the law of Florida upon the surrender of possession the said owner acquired a vested right to accept "for just compensation" the sum of money set forth in the declaration of taking and this right cannot be divested with any less procedural safeguards than those prescribed preliminary to the entry of an order of taking and surrender of possession. It is clear, from the language of section 94.07, that this part of

the declaration of taking constitutes *by operation of law*, and regardless of petitioner's "change of heart", a continuing offer to pay the sum stated " . . . for *or* on account of just compensation" and that the *owner* is given the choice. It follows that where application therefor is made expressly *for just compensation*, that particular issue is settled without the necessity of a jury trial *on that issue*. On the other hand, application for disbursement of all or part of such estimate made *on account of just compensation* does not settle the issue of just compensation and a jury trial is required in which the owner "takes the risk" of trial.

In reaching this conclusion, this court is not overlooking the constitutional provision that the compensation to be paid the owner " . . . shall be fixed by a jury of 12 men . . . ". Such provision is not violated by the voluntary settlement of such issue between the parties themselves, nor is it violated where the owner makes timely application for the petitioner's estimate of just compensation, *for just compensation*. Where the owner elects to accept the condemnor's own estimate of just compensation, the plea of the condemnor for a jury trial on that issue cannot be heard under the doctrine of equitable estoppel.

Accordingly, it is ordered, adjudged and decreed as follows —

1. That petitioner's motion to amend its petition and declaration of taking should be and the same is hereby denied.

2. That the application of Grace Gertrude Broward for distribution to her of the additional sum of $12,750, which sum together with the $60,000 previously ordered disbursed, is sought as and for just compensation, should be and the same is hereby granted.

3. That the clerk of this court shall forthwith disburse (out of the funds now on deposit in the registry of this court to secure the payment of just compensation to the owner of parcels 2, 2-A and 2-B) the sum of $12,750 to Grace Gertrude Broward as and for the final payment to said owner of the total sum of $72,750 *for just compensation* to her as owner of parcels 2, 2-A and 2-B in accordance with her motion therefor.

4. That this court reserves jurisdiction of this cause for the purpose of such further proceedings as may be necessary to determine any unsettled issues, including, but not limited to, the fixing of attorney's fees, appraiser's fees and other costs to which the owner of parcels 2, 2-A and 2-B, or her attorney, may be entitled.