MASON, Associate Judge.
Petitioner in an eminent domain proceeding, Jacksonville Expressway Authority, has appealed from an order of the trial judge granting new trials to the owners of two parcels of land taken in such proceeding for a public purpose, viz.: for use in the construction of the Jacksonville Expressway System. The trial judge granted new trials on the stated grounds that the awards in each instance were (1) less than the estimate of just compensation filed by the petitioner with its declaration of taking, (2) were so inadequate as to shock the judicial conscience, and (3) did not constitute just compensation as required by the Constitution and laws of the State of Florida. As a condition to a denial of the motions for new trial the Court had ordered the petitioner in each instance to consent to an additur to the verdict set by the jury of an amount which would bring the award up to the amount of the estimate filed by the petitioner with its declaration. Upon petitioner’s refusal to consent to such ad-diturs the trial court granted the motions for new trial.
The estimates, testimony as to value, and jury’s verdicts, are summarized as follows:
Parcel Petitioner’s Petitioner’s Owner’s Verdict Estimate Expert Witness Expert Witness
1 $ 27,000 $ 64,300 VO r-H o o o to o'
1 51,500 129,620 O rC o UD t-N cvf
The assignment of error raises the question of abuse of discretion by the trial court in ordering new trials. As a prelude to a consideration of this question, and as indicative of what its answer should be, it. is to be noted that in his orders granting the new trials the trial court affirmatively found
“that except as to the amount of the verdict, the trial * * * was and is as free from error as counsel and the Court can expect to achieve in such a *309 lawsuit. Prior to and during the Six (6) day trial, counsel for both parties vigorously asserted every conceivable procedural and evidentiary advantage possible, and there is no reason to believe that the rights of either the owner or the petitioner were violated in any appreciable degree. Even as to the amount of the verdict, it was between the lowest and highest figure testified to by the expert witness called -by each side and conforms to the charge of the Court.” (Tr. 13S).
And further “that no bias or improper motive operated on the minds of the trial jurors * * * ” Finally, in announcing that the verdicts were shocking to the Court, the trial judge conceded that they were “within the testimony.” (Tr. 137, 140)
In reviewing these orders of the trial court we are cognizant of the well-settled principle that such orders carry with them the presumption of validity and should not be reversed unless a plain case of abuse -of discretion is shown or some settled principle of law has been violated (Carney v. Stringfellow, 73 Fla. 700, 74 So. 866; Smith v. Sears, Fla., 54 So.2d 435). But there must be a reason in law for the trial judge setting aside a verdict and granting a new trial, otherwise the judge in taking such action invades the province of the jury which he is not authorized to do under equally as well established principles of American jurisprudence (Smith v. Jackson County, 134 Fla. 354, 183 So. 738).
The motions for new trial contained numerous grounds, but the trial court’s orders are based solely upon the three grounds set forth in the first paragraph of this opinion. And in reviewing these orders we are bound to consider only those grounds upon which they are predicated. Braddock v. Seaboard Air Line Railroad Company, Fla., 80 So.2d 662.
To understand the position of appellees, and to review properly the grounds of the motions for new trial predicated thereupon as basis for the trial court’s granting of the motions, it becomes necessary to burden this opinion with a chronology of events leading up to the verdicts. The petition for condemnation and the declaration of taking, which included the estimates of value required to be filed under Chapter 74 where use and title to lands sought to be condemned are desired before final judgment, were filed December 19, 1958. The estimates were based upon appraisals made by one Register, an expert appraiser. The estimate of the petitioner as to the value of Parcel One was Forty Thousand Three Hundred ($40,300) Dollars and of Parcel Two, Seventy-Two Thousand Seven Hundred and Fifty ($72,750) Dollars. Subsequently, on January 13, 1959, an appraiser was appointed by the Court who later reported to the Court that, in his opinion, the value of Parcel No. One was Forty-Seven Thousand Seven Hundred Fifty-five ($47,-755) Dollars and the value of Parcel No. Two was Seventy-Four Thousand Two Hundred Ten ($74,210) Dollars. Three days later the Court entered its order of taking predicated upon the payment into Court of sums in double the amounts of such appraisals. Defendant Grace Brow-ard as owner of Parcel No. Two thereafter petitioned the Court to order distribution to her on account of just compensation later to be awarded for that parcel, and the Court on February 4, 1959, ordered distribution to her of Sixty Thousand ($60,000) Dollars. Defendant owners of Parcel No. One did not petition for partial distribution. On the same date petitioner filed maps and plans with the Clerk of the Court for inspection by the defendants which included detailed construction plans for the proposed highway facility. On February 26, 1959, the Court set the case for trial on June 1, 1959. Defendant owner of Parcel No. Two, gave notice to petitioner for the taking of depositions upon oral examination of two appraisers who had made appraisals for the petitioner, one being the appraiser, Register, who had made the appraisal upon which *310 the estimates were based. Petitioner objected on the ground that defendant was improperly seeking to discover petitioner’s “work product”. The Court sustained the objection. Defendants then propounded interrogatories to petitioner seeking the names of persons believed to have made appraisals of the property involved. These interrogatories were answered and petitioner gave them the names of three appraisers, viz.: Richard Hamilton who testified later at the trial for the petitioner, Register, upon whose appraisals the estimates were based, and one Frank Fuss. On May 19, 1959, upon motion of petitioner, trial of the cause was reset for July 6, 1959. On June 19, 1959, at a pre-trial conference, petitioner sought leave to amend its petition and declaration of taking in order to describe accurately the property which had already been appropriated to petitioner’s use. Leave was granted and on June 29, 1959, petitioner filed an amended petition and an amended declaration’ of taking and in the latter document stated its estimates of value in the same amounts set forth in its original declaration. Trial commenced on July 6th, and petitioner produced the witness Hamilton, who gave his opinions as to values. As to Parcel No. One, the valuation -fixed by Hamilton was Twenty Seven Thousand ($27,000) Dollars and as to Parcel No. Two, Fifty-One Thousand Five Hundred ($51,500) Dollars. As to Parcel One, this figure was Thirteen Thousand Three Hundred ($13,300) Dollars less than the value fixed in the Declaration. As to Parcel Two, the difference was Twenty-One Thousand Two Hundred Fifty ($21,250) Dollars. (Tr. 287-89). Defendant owner Broward of Parcel No. Two moved the trial court to strike Hamilton’s testimony on the ground that petitioner was estopped to rely on an opinion less than its good faith estimate filed with its declaration. (Tr. 290). Petitioner then moved the Court for permission to amend its estimate of just compensation as to Parcel No. Two to conform to the testimony of Hamilton. (A. 25). Both motions were denied by the trial court. No such motions were made with respect to the estimate of just compensation for the taking of Parcel No. One. Defendants produced an appraiser, Elton Hall, who testified that the value of Parcel No. One was Sixty-Four Thousand Three Hundred ($64,300) Dollars. (Tr. 214), and that the value of Parcel No. Two was One Hundred Twenty-Nine Thousand Six Hundred and Twenty ($129,620) Dollars. (Tr. 374). The witness Hamilton’s testimony was predicated upon an appraisal which was completed two days prior to the beginning of the trial. (Tr. 141). He did not advise petitioner’s attorney of his opinion until the day the trial began. (A. 25). At the conclusion of Hamilton’s testimony petitioner rested and the defendant owner Grace Broward called the appraiser Register, upon whose appraisal the estimates were based, as an adverse witness with respect to Parcel No. Two. Register testified that his estimate appraisal was made on December 11, 1958, at Seventy-Four Thousand One Hundred Seventy-Five ($74,175) Dollars, (Tr. 334)., and stated that “two weeks or ten days ago, something like that”, he decided that his former opinion was wrong. (Tr. 335). He attributed his error to a miscalculation of the amount of land remaining to defendant Grace Broward after the taking. (Tr. 332, 336). He stated that his miscalculation was due to improper maps furnished him by the petitioner, (Tr. 343), and that he was furnished an accurate map by the petitioner only two weeks before the trial. (Tr. 335). Counsel for neither party sought to elicit from Register any opinion as to value he then held regarding Parcel No. Two, or damage to the remainder. No inquiry was made by either party of Register regarding the value of Parcel No. One. The jury awarded Thirty Thousand One Hundred Sixteen ($30,116) Dollars as just compensation for Parcel No. One and Fifty-Seven Thousand Nine Hundred Seventy ($57,970) Dollars as just compensation for Parcel No. Two. (Tr. 113).
*311 The character of the lands involved was undeveloped acreage, lying outside the city limits of Jacksonville, but in an area in which the highest and best use was further development for residential sites.
We have carefully reviewed the record herein and conclude that the trial ■court was in error in granting new trials. One ground upon which his orders was based was that the award of compensation by the jury as to each parcel was less than the estimate of just compensation filed by the petitioner with its declaration of taking. The trial court in upholding this ground of the motions concluded that the estimates filed by the petitioner must be ■construed as admissions against interest .and that petitioner was, therefore, bound by it and estopped from relying upon evidence of value less than that stated in such estimates. In this conclusion we feel that the trial court has misconstrued the purpose of such estimates. The Supreme Court in State Road Department v. Forehand, Fla., 56 So.2d 901, speaking through Mr. Justice Terrell, has determined that the purpose of Chapter 74, Florida Statutes, 1949, F.S.A., (Chapter 20304, Acts of 1941), which includes the requirement that the condemning authority state in the declaration of taking the sum estimated by it to be just compensation for the land taken, is to provide a summary method for acquiring by the authority of the title to and use of lands on short notice in order that public projects might be expedited, and at the same time preserve to the owner all the protection of due process and to assure to him just compensation; all as required by applicable provisions of the Constitution. And this Court, speaking through Sturgis, Chief Judge, in State ex rel. State Road Dept. v. Wingfield, Fla.App., 101 So.2d 184, 188, has held that such estimates of value fixed in the declaration of taking are “Not presentable to the jury for any purpose”. Such holding does no more than to confirm the wording of the Statute (Section 74.09, Florida Statutes, 1957, F.S.A.), which declares that such estimates shall not be admitted as evidence before the jury empaneled to fix the award of just compensation to the owner. The declaration of taking not being admissible in evidence before the triers of the facts, and its exhibition to the jury being expressly forbidden by the statute, it cannot therefore be reasonably argued that the estimate of just compensation contained therein is an admission against interest binding upon the petitioner so as to preclude it from relying upon evidence of value less than the amount of such estimate to sustain a verdict in a sum less than said estimate. A statement or declaration which under the rules of procedure has no evidentiary value cannot be said to be an admission against interest. Furthermore, it is evident from a consideration of the whole of Chapter 74 as gleaned from a reading of all its provisions that the purpose of stating an estimate of just compensation in the declaration of taking is to fix a basis for withdrawal by the owner from the money deposited by the petitioner of a portion or all of such estimate, so that the owner may have the use of it, as the petitioner has the use and title to his land, while the suit is pending and until the award is fixed by the jury and paid in full by the petitioner.
The other two grounds upon which the orders granting new trials are based are so interrelated that they must be considered together in determining whether the trial court erred in granting the motions upon such grounds. They are that the verdicts were so inadequate as to shock the conscience of the Court and did not constitute just compensation. It is conceded by appel-lees that the amount of the verdict in each instance lay between the lowest and highest figures as to value testified to by the expert witnesses at the trial who gave opinions as to value, but they say that the verdicts should be set aside because the owners have, in effect, been denied due process of law and just compensation for their lands as a result of what they regard as a lack of good faith on the part of appellant petitioner in offering testimony at the time of *312 the trial as to value less than the values stated in the estimates.
We fail to see how any improper advantage was taken of appellees as evidenced by the entire procedure, before or during the trial. They were represented by counsel who are lawyers of outstanding ability. There was no limitation upon appel-lees’ opportunity to get as many expert witnesses to testify as to value as their able counsel thought necessary. They had opportunity not only to cross-examine fully appellant’s expert witness, but when he testified as to values less than the figures contained in the estimates, the appraiser, Register, who appraised for the estimates, was called by the Court at the request of appellees and testified as an adverse witness. Not having to vouch for his credibility appellees were privileged to cross-examine and impeach this witness fully to bring out before the jury not only the predicate for his first appraisals, but any discrepancies, if any, between it and that of his subsequent appraisals which could be argued to have no basis; as well as the privilege of asking him for his opinion at the time of the trial as to values of the property involved. Upon examination by petitioner’s counsel this witness testified as to facts given in explanation of his different appraisals which the jury had a right to, and evidently did, consider in their determination of just compensation to be awarded the owners. (Tr. 341 et seq.).
We know of no rule, and have not been cited any such by counsel for appel-lees, that limits a condemning authority in the presentation of evidence as to value to offer opinions as to value only equal to or in excess of estimates of just compensation fixed in the declaration of taking. Appellees say, in effect, that inasmuch as appellant let the estimates remain of record without amendment for some seven (7) months before trial they were entitled to rely upon their bona fide character and that they were lulled into the belief, so to speak, that petitioners would offer testimony of value in amounts of not less than the estimate values. We fail to see how any such action on the part of the petitioner has harmed the appellees herein for they had no reason to believe that petitioner would be confined in its testimony to values fixed in the estimates. We have already concluded that the estimates stated in the declaration of taking are not to be considered as evidence in the case but are required as a basis solely for the making of distribution to the owners prior to trial. They had full opportunity to present testimony to establish values not only in excess of petitioner’s expert witness (Hamilton), but also in excess of the values fixed in the estimates, and as a matter of fact, they did present such in the testimony of their witness, Hall, whose opinions as to values of the two parcels involved on this appeal were well above those testified to by Hamilton and those fixed by the appraiser Register which were used as basis for the estimates stated in the declaration of taking. There being no rule of evidence nor principle of law placing a floor on evidence of value at the level of the amount of the estimate stated in the declaration of taking the appellees cannot claim surprise when evidence is presented of value beneath such level.
 In support of the order granting a new trial, which they argue was necessary to correct an error made by the trial judge, appellee-owners of Parcel No. Two raise for the first time in their brief the refusal of the trial judge prior to trial to permit their oral examination, for discovery purposes, of appellant’s appraisers. No such complaint was stated as a ground in the motion for new trial, nor by cross-assignment of error. If such denial by the trial judge was an error, the same has been waived by such appellees’ failure to raise properly the issue for review by this Court. It should be noted that in answer to interrogatories appellant furnished to all ap-pellees, well in advance of the trial, the names of all persons who had appraised the properties involved in this proceeding, *313 among which were the witnesses Register and Hamilton by whose testimony at the trial such appellees claim they were surprised. Furthermore, the trial court in its orders granting new trials affirmatively found that due process was accorded ap-pellees, and our careful examination of the record compels us to agree and to conclude that if such error now complained of did occur it was not of such character as to amount to a denial of due process or of substantial justice as to warrant granting of a new trial for such reason.
Having concluded, as did the trial judge, that appellees were not denied due process of law but received a fair trial •of the issues involved, we now come to the ■question as to whether the verdicts were so low as to amount to inadequate compensation — that is to say so low as to amount to inadequate compensation as required by the 'Constitution. Was the trial judge justified in concluding that his judicial conscience was shocked? We think not. The Constitution of Florida, to assure that full •compensation is awarded an owner of private property where it is taken for public use, provides that such compensation “shall be ascertained by a jury of twelve men in a court of competent jurisdiction, as shall be prescribed by law”. Art. XVI, Sec. 29, F.S.A. The statute which sets forth the procedure to be followed in eminent domain proceedings directs that in such an action when the cause is at issue the judge “shall cause a jury of twelve men to be empaneled to try what compensation shall be made to the defendants for the property sought to be appropriated, * * * which issue shall be tried in the same manner as the other issues of fact are tried * * *.” Ch. 73.10, Florida Statutes. Both the Constitution and the Statute contemplate, as in all other actions triable by juries, that the jury is the sole arbiter of the facts. We have carefully reviewed the evidence presented to the jury in this trial that consumed almost a week’s time and find that it is ample to sustain the verdicts. The jury had the benefit of expert testimony from witnesses on both sides of the issue, which witnesses were examined and cross-examined, both as to qualifications to render opinions as experts and as to the bases for such opinions so rendered. The jury as triers of the fact had opportunity to appraise not only the testimony of the witnesses but also to observe them while testifying, to determine whether or not they were fair and candid in their testimony and opinions. The determination of the reasonableness and weight to be given such testimony was the sole prerogative of the jury under proper instructions by the trial judge. No alleged erroneous instruction of the Court is properly presented this Court to-review.
The verdict in each instance was within the limits of the evidence and is supported by substantial competent evidence. The trial court should set aside a jury verdict only when it is apparent that it is not supported by substantial evidence in the record, or when it is apparent that the jury was influenced by prejudice, bias, or other improper influence. Smith v. Jackson County, 134 Fla. 354, 183 So. 738; Edwards v. Miami Shores Village, Fla., 40 So.2d 360. It is an abuse of discretion to grant a new trial when the verdict finds ample support in the record and no illegal evidence is shown to have gone to the jury and nothing can be accomplished except to have another jury review the cause, which is the case as reflected by this record. Hart v. Held, 149 Fla. 33, 5 So.2d 878. The trial court has affirmatively determined that the instructions were correct, that “the trial * * * was * * * as free from error as counsel and the Court can expect to achieve in such a lawsuit”, and “that no bias or improper motive operated on the minds of the trial jurors * * * ” With these conclusions we agree, after a review of the entire record, and conclude, therefore, that the trial court’s conscience should not have been shocked by the verdict, and that he was in error in granting new trials.
Appellant raises the point of the trial court’s requirement that it consent to an *314 additur to the amount awarded by the jury in such sum as would bring the verdict up to the figure fixed in the estimate included in the declaration of taking, as a condition to the Court’s refusal to grant new trials. We do not have to decide this question inasmuch as appellant did not so consent. The motions were granted and appellant has appealed therefrom and we are reversing the trial court therefor. The condition not having been met by appellant, it has suffered no adverse effect therefrom. We, therefore, do not consider the decision in Sarvis v. Folsom, Fla.App., 114 So.2d 490, decided by this Court, as bearing upon the question as it is presented in the case here.
The orders of the trial court granting new trials are reversed, with directions that judgments be entered on the verdicts returned by the jury in each instance.
It is so ordered.
STURGIS, Acting C. J., and CARROLL, DONALD K., J., concur.