CARROLL, DONALD K., Judge.
The condemnor in an eminent domain proceeding has appealed from a final judgment entered by the Circuit Court for Du-val County upon a directed verdict for the appellee-landowner.
Other phases of this litigation have been before this court on two previous occasions. Our judgments in those appellate proceedings, and the Florida Supreme Court’s decision quashing our first judgment, should be reviewed here in order to afford a full understanding of the background giving rise to the final judgment appealed from in the present appeal. These basic background facts are as follows:
The condemnor, the Jacksonville Expressway Authority, a public body, filed in the said circuit court a petition to condemn certain lands in Duval County for use in the Jacksonville Expressway System. At the same time the petitioner filed a declaration of taking pursuant to the provisions of Chapter 74, Florida Statutes, F.S.A., which provisions we will discuss later in this opinion.
In accordance with those statutory provisions, the Authority included in its declaration of taking its estimate of value as to each parcel of land sought to be condemned. Its estimate of the value of parcel numbered 2 (sometimes referred to in the record as parcels 2, 2A and 2B), owned by the appellee Grace Gertrude Broward and involved in the present appeal, was $72,750.
Nevertheless, at the first trial before a jury the Authority’s expert witness testified that the value of parcel 2 was $51,500, and the appellee’s expert witness testified that the value was $129,620. The amount awarded by the jury in its verdict at the first trial for the taking of the said parcel' was $57,900. The appellee Broward and the owner of another parcel (one Florence Vivian Bennett) filed motions for a new trial. The trial court granted these motions and ordered a new trial on the stated grounds: that the award as to each of the said parcels was less than the estimate of just compensation filed by the petitioner-in its declaration of taking; that the award was so inadequate as to shock the judicial conscience; and that the award did not constitute just compensation as required by the Constitution and laws of Florida. As a condition to a denial of the motions for new trial the court had ordered the con-demnor in each instance to consent to an additur to the verdict set by the jury of an amount which would bring the award up to the amount of the estimate filed by the con-demnor in its declaration. Upon the latter’s refusal to consent to such additurs, the court granted the motions for new trial.
This order granting the new trial was appealed by the Authority to this court. In an opinion and judgment, reported in Jacksonville Expressway Authority v. Bennett et al., Fla.App., 124 So.2d 307 (1960), we reversed the said order with directions that judgments be entered on the verdict returned by the jury in each instance. In our said opinion we set forth and discussed in detail the proceedings preliminary to the trial as well as the evidence at the trial, which discussion we need not repeat here.
*823 Our said decision, however, was quashed by the Supreme Court of Florida on a petition for certiorari filed therein by the said landowners. See Bennett et al. v. Jacksonville Expressway Authority, Fla., 131 So.2d 740 (1961). The apparent reason for the quashal was the Supreme Court’s con■clusion that “when the judge declared he was shocked by the amounts of the verdicts, Tie manifestly exercised without abuse th<> •discretion vested in him.” This holding, however, must be considered in the light of ■the specific reference to it by the Supreme ■Court in its rehearing opinion in the later •case of Russo v. Clark, 147 So.2d 1 (1962), page 4.
The concluding paragraphs of the Supreme Court’s opinion concern a point relevant in our determination of the present .appeal, as follows:
“Although we have referred to the additur ordered by the trial judge as indicating the extent to which he considered the verdict unjust, we do not recognize his authority to effectuate an •increase in the verdict of the jury. See Sarvis v. Folsom, Fla.App., 114 So.2d 490; State Road Department of Florida v. Cox, Fla.App., 118 So.2d 668; Wohlfiel v. Morris, Fla.App., 122 So.2d 235.
“We quash the decision of the District Court of Appeal, First District, so that the cause may proceed to a new trial in the circuit court instead of being concluded by entry of a judgment for the sum of the verdict and the ad-ditur.”
Following the remand of the cause to the ■Circuit Court, the Authority filed a motion therein for an order permitting it to amend its declaration of taking by reducing the ■estimated value of the land owned by the appellee Broward, the Authority contending that the original estimate as set forth in the declaration of taking was erroneous "because of improper or incomplete information furnished to the appraiser employed Iby the Authority. At the same time the said appellee filed a motion for an order disbursing to her the remainder of the funds in the court’s registry which had been deposited by the Authority upon the filing of its declaration of taking at the commencement of the proceedings. Upon considering both motions, the Circuit Court entered an order denying the Authority’s motion and granting the said appellee’s motion. In this order the court also directed its clerk to disburse to the said appellee, who had previously taken down $60,000, out of the funds deposited by the Authority, the sum of $12,750 as the final payment to her “of the total sum of $72,750.00 for just compensation to her as owner” of the land in question. The Authority appealed to this court from the said order. Then the said appellee filed with us a motion to dismiss the Authority’s appeal on the ground that the said order was an unappealable order under the appellate rules. We agreed with this contention, granted the motion to dismiss, and dismissed the appeal in an opinion and judgment reported in Jacksonville Expressway Authority v. Bennett et al., Fla.App., 149 So.2d 74 (1963), pointing out that the correctness of the said order of disbursement could later be reviewed in an appeal “after entry of final judgment upon such verdict as may be ultimately rendered by the jury in this cause.” The said order can now, of course, be reviewed by us in the present appeal from the final judgment.
Following our dismissal of the last appeal as aforesaid, the appellee Broward filed an application in the Circuit Court for an order setting the cause for trial on the remaining issues not previously disposed of. After a hearing on this motion the court entered an order setting a date for the trial. In the order the court adverted to the “vigorous assertion” of the Authority’s counsel “that the fixing of just compensation must be submitted to a jury of twelve men in accordance with the mandate of the Constitution of Florida.” In response to that assertion the court stated in the said order that it adhered to a previous order (the order appealed from in' the last ap *824 peal) which is “incorporated herein by reference insofar as it relates to petitioner’s right to have just compensation fixed by a jury, and hold that in the case at bar the petitioner has waived its right to a jury trial on the issue of just compensation by proceeding under the provisions of Chapter 74, F.S.A., and is, under all the circumstances of this case, estopped to assert a constitutional right to such a determination. Therefore, this court rules, and will instruct the jury, that the sum of $72,750.00 is, as a matter of law, just compensation to the defendant-owner for the taking of Parcels 2, 2-A and 2-B and that the only remaining undisposed issue for determination by the jury is the matter of what is a reasonable fee to be allowed defendant-owner for the services of her attorney herein.”
The Authority’s assertion and the court’s response thereto in the said order as set forth in the preceding paragraph, accurately describe the crucial question for our determination on the present appeal.
Pursuant to the last-discusscd order, a jury trial was held on the sole issue of what should be paid to the appellee Brow-ard for the services of her attorney. At the beginning of the trial the counsel for the Authority proffered testimony before the jury as to the issue of just compensation for the taking of parcels 2, 2A, and 2B. The court denied the proffer and ruled that “that issue has been settled and no testimony can be presented or received thereon.”
At the conclusion of brief testimony the court instructed the jury that the just compensation to the appellee Broward for the taking of her land was, as a matter of law, $72,750, which figure, the court stated, it had filled in on the form of verdict submitted to the jury. The court also told the jury that it had also filled in an amount for the attorney’s fee which the parties had agreed was a reasonable fee, so that all the jury had to do was to elect one of their number as foreman and sign the verdict.
For the first time, then, in any of the several appellate proceedings that have been had so far in the course of this litigation, the question is squarely presented to an appellate court whether a condemnor which files a declaration of taking under our laws is bound by its estimate of the value of land taken, so as to preclude it from presenting testimony of a different value at a jury trial, and is estopped to deny a landowner’s right to a verdict, judgment, and final disbursement in the amount of such estimate.
The position taken by the trial court at nearly every stage of the proceedings was. essentially the same — namely, that the estimate of value of land sought to be condemned as set forth in the Authority’s declaration of taking constituted, as a matter of law, the “just compensation” to the landowner guaranteed by the statutes and the Constitution of the State of Florida. This proposition underlay its order granting' a new trial following the first trial, its order denying leave to amend the Authority’s estimate in the declaration, and its direction of a verdict in the second trial.
Nothing said by this court or the Supreme Court in the course of the several appellate proceedings heretofore undergone in this litigation can be construed as an approval of that proposition. In our opinion in the first appeal we stated that we knew of no rule “that limits a condemning authority in the presentation of evidence as to value to offer opinions as to value only equal to or in excess of estimates of just compensation fixed in the declaration of taking.” (124 So.2d 307, page 312).
On certiorari to the Supreme Court that court held that the trial court could not bring the verdict up to the amount of the value in the estimate through the device of an additur, although the probable reason for this holding was the lack of authority in the trial court to use this device. (131 So.2d 740, page 744.)
In the second appeal, which we dismissed on procedural grounds, we expressed our disbelief that the trial' court was taking *825 from the jury its right to determine just compensation, as follows:
“We are unable to share appellant’s conclusion that by the entry of the order sought to be reviewed the trial court .substituted itself for a jury, and purported to finally adjudicate the just compensation to be paid for the appropriation of appellee’s land, thereby depriving appellant of a trial by jury as .■guaranteed by our constitution. We reach this conclusion from the clear •and unambiguous language of the •above quoted statute which provides that payment of the money set forth in the declaration of taking shall be ‘for ■or on account of the just compensation to be awarded in said proceeding * * * ’, and, ‘If, however, such payment exceeds the final award there may ■be a recovery by the petitioner of such ■excess upon petition in the same proceeding for which sum judgment shall ¡be entered and which also may be decreed to be a lien against any property ■of such party, except his homestead.’ ” (149 So.2d 74, page 76).
Nevertheless, despite the above comments by the Supreme Court and this court, it cannot truly be said that the issue of whether the estimate of value in the Authority’s declaration fixes just or full compensation as a matter of law, has been directly passed upon by either appellate court, so we proceed to do so now.
We think the unsoundness of the trial court’s proposition is made manifest by a reading of Section 29, Article XVI, of the Constitution of Florida, F.S.A., providing :
“No private property, nor right of way shall be appropriated to the use of any corporation or individual until full compensation therefor shall be first made to the owner, or first secured to him by deposit of money; which com■pensation, irrespective of any benefit ■from any improvement proposed by. such corporation or individual, shall be ascertained by a jury of twelve men in a court of competent jurisdiction, as shall be prescribed by law.”
Our organic law could hardly more unequivocally express the requirement that the full compensation for the taking of private property must be determined by a jury, as prescribed by law.
Section 12 of the Declaration of Rights in the Florida Constitution provides that private property shall not be taken “without just compensation.”
Turning then to the statutes of this state, we find that in the case at bar the Authority proceeded pursuant to the provisions of Chapter 74, Florida Statutes, F.S.A.
Section 74.01, Florida Statutes, F.S.A., specifically grants power to the Jacksonville Expressway Authority, along with certain other public bodies, in such proceedings to file in the cause “with the petition, or at any time before judgment, a declaration of taking, signed by the petitioner, or its duly authorized agent or attorney, declaring that said lands are thereby taken for the use of the petitioner, and there shall be attached thereto the petitioner’s estimate of value, such estimate to be based upon a valid appraisal, made in good faith, on each parcel in the proceeding.”
Section 74.02 provides for the service of a notice upon all interested parties regarding a hearing on questions of the court’s jurisdiction, the sufficiency of the pleadings, and the suggestions of the parties for persons to be appointed appraisers. Section 74.03 provides for the court’s appointment of three appraisers after the said hearing.
Section 74.04 provides for a hearing before the court to consider the report of the appraisers, at which hearing all of the parties may introduce testimony as to the value of the property sought to be condemned. Section 74.05 provides that at the close of such testimony the court shall make an order securing the rights to which the parties may be entitled and requiring the *826 condemnor to deposit in the registry of the court such sum of money as the court shall determine will secure and fully compensate the persons lawfully entitled to compensation, “as ultimately determined by final judgment of the court * * * ” which deposit shall not be less than double the value as fixed by the appraisers appointed by the court.
We quote Section 74.07 in full because it so well sets forth the nature and character of the estimate of value in the declaration of taking, as follows:
“Upon application of the parties in interest, the court may order that the sum of money set forth in the declaration of taking be paid forthwith for or on account of the just compensation to be awarded in said proceeding from the money deposited with the clerk of said court. The estimate of just compensation in the declaration of taking may be amended from time to'time. If the compensation finally awarded in respect of said lands or any parcel thereof, shall exceed the amount of money so received by said person entitled, the court shall enter judgment against the petitioner for the amount of the deficiency. If, however, such payment exceeds the final award there may be a recovery by the petitioner of such excess upon petition in the same proceeding for which sum judgment shall be entered and which also may be decreed to be a lien against any property of such party, except his homestead.”
It is our opinion that in every provision of the just-quoted statute the State Legislature evinced its intention that the condemnor’s estimate of value is not to be considered as finally establishing the full or just compensation guaranteed by the Florida Constitution.
A similar intention is evidenced in Section 74.09, which reads:
“The declaration of talcing, the amount of the deposit and the report of the appraisers appointed by the court, shall not be admissible in evidence in any cause and shall not be exhibited to any jury empaneled for the purpose of assessing the value of any land in condemnation. The appraisers appointed by the court shall not be competent witnesses in the cause when said cause is submitted to the jury for the purpose of fixing an award.”
Nowhere in Chapter 74 can we find any provision indicating that the Legislature intended that the estimate of value should be taken as fixing full or just compensation for the landowner. In fact, as we have pointed out, certain of the provisions in that chapter indicate that the Legislature intended exactly the contrary.
Our construction of Chapter 74 is in conformity with the Supreme Court’s concept of that chapter’s purpose as set forth in the opinion of Mr. Justice Terrell, speaking for the court in State Road Department v. Forehand, Fla., 56 So.2d 901 (1952), as follows:
“In the execution of public contracts for roads, streets, public buildings and other public projects it is often highly important to acquire the use of lands on short notice. Chapter 74 provides nothing more than a summary process for doing this in order that urgent public projects may proceed while the act of condemnation is being carried out. Chapter 74 preserves to the owner every right vouchsafed to him by Section 12, Declaration of Rights, Section 29, Article XVI of the Constitution, or the Fourteenth Amendment to the Federal Constitution. In fact, in so far as this case is concerned, the Fourteenth Amendment to the Federal Constitution requires no more than Section 12, Declaration of Rights.
“Notice to the parties, the appointment of appraisers, the submission of testimony, the right to be represented by counsel and a determination by the *827 court of whether or not these things have been done are all required before possession of the land is turned over to the petitioner, including a deposit in the registry of the court of no less than twice its appraised value. If the owner is not satisfied with the amount awarded he is entitled to object and the right of trial by jury is preserved. In making his order affecting possession the court has ample power to include all costs, attorney’s fees or any other loss the owner may sustain, account of depreciation in contiguous lands or buildings by reason of the condemnation. In other words, ‘just compensation’ as contemplated by Section 12, Declaration of Rights or ‘full compensation’ as contemplated by Section 29, Article XVI of the Constitution is assured the land owner.”
In that case the Supreme Court upheld the constitutionality of Chapter 74.
Proceedings under Chapter 74, Florida Statutes, F.S.A., entitled “Proceedings Supplemental to Eminent Domain,” are exclusively in aid of and ancillary to statutory, constitutional, and common-law principles governing the exercise of the power of eminent domain and do not supplant the latter in any particular. There is no device by which the condemning authority can avoid its constitutional obligation to provide "full compensation” to the owner for the property appropriated as “ascertained by a jury of twelve men in a court of competent jurisdiction, as shall be prescribed by law,” as required by Section 29, Article XVI, of our Constitution. Our courts have consistently interpreted this constitutional provision and the laws enacted pursuant thereto in such manner as to afford the property owner the highest measure of protection under the law, and the same concept is applicable to the interests of the public. The underlying necessity for the enactment of Chapter 74, as cogently stated by Justice Terrell, supra, is the fact that there are situations where there is an urgent need for prompt action in order to serve the public welfare. That very circumstance makes it inevitable that from time to time more than normal error will incubate in following that chapter. Upon appropriate pleadings and procedures the condemning authority is entitled to have its own estimate as well as that of the court-appointed appraisers amended or corrected to speak the truth. It is also entitled at the jury trial under Chapter 73, irrespective of the amount stated by such estimate or appraisal, to adduce evidence on the issue of compensation to be made to the owner for the taking of his property, even as the owner is entitled to do so. In fine, the guiding light of every proceeding in eminent domain or ancillary thereto is to secure to the owner of the property taken full compensation — to malee him whole— nothing less, nothing more.
As members of the judicial department of the government, we are not privileged to speculate and rule according to our feelings as to what would be a wise solution of the problem posed in this appeal. Members of the legislative department might more properly so consider when composing legislation on this subject, but even they could not legally enact a law that would deprive any citizen of the constitutional right to a jury trial on the question of full compensation.
In the case at bar the final judgment appealed from, being based upon a directed verdict that in effect deprived the parties of their constitutional right to a jury determination of full compensation, must be, and it is, reversed, and the cause is remanded with directions for a new trial on the issue of full compensation.
Reversed and remanded with directions.
STURGIS, C. J., and RAWLS, J., concur.