693 So.2d 994 (1997)
LEE COUNTY, a political subdivision of the State of Florida, Appellant,
v.
Peter F. PIERPONT and Mary J. Pierpont, Appellees.
No. 95-04657.
District Court of Appeal of Florida, Second District.
January 24, 1997.
Rehearing Denied March 13, 1997.
*995 James G. Yaeger, Lee County Attorney, and John J. Renner, Assistant County Attorney, Fort Myers, for Appellant.
William M. Powell of William M. Powell, P.A., Cape Coral, for Appellees.
CAMPBELL, Acting Chief Judge.
Appellant, Lee County, challenges the amount of attorney's fees awarded appellees, Peter F. Pierpont and Mary J. Pierpont, in an eminent domain action. We reverse and remand for a recalculation of the attorney's fees to be awarded.
The principal issue in this appeal involves the application of section 73.092, Florida Statutes (Supp.1994), to the circumstances of this case. By its terms, section 73.092, as amended in 1994, applies to all actions filed after October 1, 1994. It is, therefore, applicable to this case.
The pertinent parts of section 73.092 provide as follows:
73.092 Attorney's fees.
1) Except as otherwise provided in this section, the court, in eminent domain proceedings, shall award attorney's fees based solely on the benefits achieved for the client.
(a) As used in this section, the term "benefits" means the difference, exclusive of interest, between the final judgment or settlement and the last written offer made by the condemning authority before the defendant hires an attorney. If no written offer is made by the condemning authority before the defendant hires an attorney, benefits must be measured from the first written offer after the attorney is hired.
The history of this case shows that on November 2, 1994, the Lee County Board of County Commissioners adopted a resolution of necessity directing the county attorney to commence eminent domain proceedings to acquire the necessary rights-of-way for the construction of the Mid-Point Bridge to cross the Caloosahatchee River to connect Cape Coral and Fort Myers. At its meeting on December 7, 1994, the county commission gave specific authority to the county attorney to make written offers not to exceed twenty percent over the highest appraised value to acquire the properties needed for the Mid-Point Bridge project.
On January 5, 1995, the county attorney filed a petition in eminent domain to acquire the property needed for the Mid-Point Bridge project, including the property of appellees (Parcel No. 115). Simultaneously with the filing of the eminent domain petition, the county attorney also filed, pursuant to section 74.031, Florida Statutes (1993), a Declaration of Taking and Estimate of Value. The good faith estimate of value contained within the declaration of taking for appellees' Parcel No. 115 was $69,000. An order of taking was rendered on March 10, 1995, and the good faith estimate of $69,000 was deposited into the registry of the court.
On April 3, 1995, appellees, through their attorney, filed an answer to the Petition in Eminent Domain in which they admitted as true all the allegations of the petition, denying only the good faith estimate of value contained within the declaration of taking. By letter dated April 19, 1995, the county attorney communicated to appellees' attorney as follows:
Dear Bill:
I have received your answer filed on behalf of Mr. and Mrs. Pierpont. From this point on, I will communicate only with you as the representative of Mr. and Mrs. Pierpont.
The 1995 appraisal establishes a $69,000.00 value for the parcel. I am authorized to offer the sum of $82,800.00 as full compensation for the taking of Parcel 115. No further offers will be made and no further negotiations will be entertained. If this sum is unacceptable to your clients, I will set the case for trial. Please advise whether your clients will accept $82,800.00 as full compensation prior to May 15, 1995 at which time the offer will expire.
*996 The $82,800 offer contained in the county attorney's letter was not accepted, and the record discloses that no challenge was made during the proceedings to the authority of the county attorney to make the offer.
The case was ultimately settled by a stipulated final judgment rendered on September 8, 1995, in which the parties agreed that appellees would receive $87,500 as full compensation for their property.
The dispute as to the amount of attorney's fees awarded appellees arises over whether the section 73.092 statutory benefits achieved for appellees by their attorney should be calculated based on the difference between the final judgment amount of $87,500 and the county attorney's offer of $82,800, or the difference between the final judgment of $87,500 and the good faith estimate of the declaration of taking of $69,000. We conclude that the intent of section 73.092 as to the proper measure of the "benefits achieved" requires that the calculation be based on the difference between the final judgment amount and the amount contained in the offer by the county attorney in his letter of April 19, 1995. We make this conclusion because we do not perceive it to have been the legislature's intent to equate the statutorily mandated "good faith estimate of value" required by section 74.031 with the "written offer" contemplated in section 73.092. If that was the intent, section 73.092 should have made reference to the good faith estimate contained in and required by section 74.031. It does not. On the contrary, section 73.092 uses the specific term "written offer." The good faith estimate is not a "written offer." In fact, the good faith estimate is not even required or a part of a proceeding in eminent domain unless the condemning authority desires to acquire possession of and title to the property prior to entry of final judgment. See §§ 74.011 74.071, Fla.Stat. (1993).
An "offer" has been defined as follows:
A proposal to do a thing or pay an amount, usually accompanied by an expected acceptance, counter-offer, return promise or act. A manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it. Restatement, Second, Contracts, § 24. A promise; a commitment to do or refrain from doing some specified thing in the future. An act on the part of one person whereby that person gives to another the legal power of creating the obligation called contract. McCarty v. Verson Allsteel Press Co., 44 Ill.Dec. 570, 576, 89 Ill. App.3d 498, 504, 411 N.E.2d 936, 942. The offer creates a power of acceptance permitting the offeree by accepting the offer to transform the offeror's promise into a contractual obligation.
See Black's Law Dictionary 1081 (6th ed. 1991). If the "good faith estimate" of chapter 74 was to be considered an "offer," as Judge Blue urges in his dissent, a property owner could immediately file an acceptance of the "good faith estimate" and under the theory of offer and acceptance the condemnor would be bound by the "good faith estimate." Such does not appear to us to be the law, however, in regard to a "good faith estimate." The court in Jacksonville Expressway Authority v. Bennett, 158 So.2d 821, 827 (Fla. 1st DCA 1963), addressed the non-binding effect of the good faith estimate and said:
Upon appropriate pleadings and procedures the condemning authority is entitled to have its own estimate as well as that of the court-appointed appraisers amended or corrected to speak the truth. It is also entitled at the jury trial under Chapter 73, irrespective of the amount stated by such estimate or appraisal, to adduce evidence on the issue of compensation to be made to the owner for the taking of his property, even as the owner is entitled to do so. In fine, the guiding light of every proceeding in eminent domain or ancillary thereto is to secure to the owner of the property taken full compensationto make him wholenothing less, nothing more.
The issue was also spoken to in Florida East Coast Railway Co. v. Broward County, 421 So.2d 681, 684 (Fla. 4th DCA 1982), wherein the court stated:
In determining the sufficiency of appraisal evidence at a taking hearing, the issue is whether the estimate of value was *997 made in good faith and was based upon a valid appraisal. § 74.031, Fla.Stat. (1981), Valleybrook Developers, Inc. v. Gulf Power Co., 272 So.2d 167 (Fla. 1st DCA 1973). The estimate of value, when deposited into the court registry, secures the landowner in his right to obtain full compensation for the property rights taken. §§ 74.051(2) and 73.071, Fla.Stat. (1981). The estimate does not establish the value of the property rights and a court's determination that the estimate was made in good faith based upon a valid appraisal is not a finding of just compensation. Rather, after the condemning authority takes possession and title pursuant to a "quick taking" proceeding (Chapter 74), if compensation or severance damages are in issue, a jury is empaneled to make a determination of value. § 73.071, Fla.Stat. (1981).
See also Shannon Properties, Inc. v. Tampa-Hillsborough County Expressway Auth., 605 So.2d 594 (Fla. 2d DCA 1992).
In short, we conclude that the "good faith estimate" of value contained within a declaration of taking pursuant to Proceedings Supplemental to Eminent Domain contained in chapter 74 has no relationship to the "written offer" contemplated by the legislature in enacting section 73.092. But see Seminole County v. Rollingwood Apartments, Ltd., 678 So.2d 370 (Fla. 5th DCA 1996).
Finally, appellees, both in the trial court and here, have crafted a rather cunning argument built around an alleged violation of the Sunshine Law, section 286.011, Florida Statutes (1993), by the county attorney in his letter offer of April 19, 1995. In short, appellees argue that because the county commission did not specify a particular dollar figure that the county attorney could offer to the landowners, the commission's specific authorization for the county attorney to make written offers to the property owners "not to exceed 20% over the highest appraised value obtained by Lee County" left such discretion in the county attorney that he violated the Sunshine Law by not holding a public meeting before making his offer. We reject that argument as being without substance. The county commission specifically authorized the county attorney to settle the cases for the appraised value plus twenty percent. His letter of April 19, 1995, did exactly that. He offered to settle for $82,800, which was twenty percent over the appraised value of $69,000. Moreover, we also conclude that appellees are without standing to raise the bona fides of the offer since they never sought to challenge the authority of the county attorney to make the offer until the issue on attorney's fees arose.
We, therefore, reverse the order of the trial court and direct on remand that appellees' attorney's fee award based on benefits achieved be determined based upon the difference between the county attorney's offer of $82,800 and the final judgment amount of $87,500.
PARKER, J., concurs.
BLUE, J., dissents with opinion.
BLUE, Judge, dissenting.
I respectfully dissent because I believe that the good faith estimate of value should operate as an offer once the trial court has ordered deposit in the court registry and title has vested in the condemning authority. It appears that the Fifth District has taken this position without discussion. See Seminole County v. Rollingwood Apartments, Ltd., 678 So.2d 370 (Fla. 5th DCA 1996) (stating without discussion that the trial court calculated the benefit achieved by comparing the amount of the final judgment and the "initial offer/good faith deposit"). This construction of the statute supports the legislative intent of calculating fees based solely on the benefits achieved. Accordingly, I would affirm.
To determine if the good faith estimate is an offer, one can consider whether the good faith estimate is an amount that can be accepted by the landowner to settle the litigation. That is, may the landowner agree that the good faith estimate is a sufficient amount of money for the land being condemned, accept that amount in exchange for the land, and thereby end any controversy? If this is not the law, it should be. Unfortunately, I can find no direct precedent to support this last conclusion.
*998 On the other hand, there appears to be no binding precedent that prevents a landowner from accepting the good faith estimate in full settlement once the trial court has ordered the deposit into the court registry and title has vested in the condemning authority. At this point, the right to compensation vests in the landowner under section 74.061, Florida Statutes, and a condemning authority cannot dismiss the action without the landowner's consent. O'Sullivan v. City of Deerfield Beach, 232 So.2d 33 (Fla. 4th DCA 1970).
The majority opinion finds comfort in Jacksonville Expressway Authority v. Bennett, 158 So.2d 821 (Fla. 1st DCA 1964). A careful reading of this case does not support the proposition that a landowner is precluded from accepting the good faith estimate as full payment for land taken. Bennett was the fourth appeal in an eminent domain action. See Jacksonville Expressway Authority v. Bennett, 124 So.2d 307 (Fla. 1st DCA 1960); Bennett v. Jacksonville Expressway Authority, 131 So.2d 740 (Fla.1961); and Jacksonville Expressway Authority v. Bennett, 149 So.2d 74 (Fla. 1st DCA 1963). These cases stand for the proposition that the good faith estimate is not binding on the condemning authority's position at trial. This holding does not persuade me on the issue at hand because offers are seldom admissible or binding on a party's position at trial. See, e.g., § 45.061 (offers of settlement); § 73.032 (offers of judgment in eminent domain actions); § 768.79 (offer of judgment).
A landowner should be able to rely on the good faith estimate and accept that amount in full settlement for the land taken. I find no reason to expect that this holding would present a roadblock to a fair and efficient exercise of eminent domain powers. If condemning authorities make the estimate in good faith, as they are required to do, they have estimated what they would be willing to pay for the property. Using this written estimate to calculate attorney's fees will only encourage condemning authorities to make realistic estimates. Property owners can then have confidence in accepting the offers without incurring unnecessary legal expenses that drive up the cost of acquiring the land and that are ultimately paid by the taxpayers. In addition, I can envision cases where the condemning authority makes no other written offer, but has filed a declaration of taking with a good faith estimate of value. If the estimate did not provide a starting point for the fee award, the fees might be calculated as a percentage of the total settlement or judgment, thus driving up the costs associated with eminent domain proceedings. See Department of Natural Resources v. Gables-By-The-Sea, Inc., 374 So.2d 582 (Fla. 3d DCA 1979) (approving fee award under earlier version of statute, noting that the attorney had achieved a benefit measured by the ultimate recovery because the condemning authority made a zero offer). Alternatively, the condemning authority could argue that the property owner should be denied attorney's fees because without a written offer there is no measurable benefit.
Finally, I am concerned that the majority opinion could eventually work to deprive landowners of their constitutionally guaranteed right to full compensation, which includes a right to attorney's fees. See Schick v. Florida Dept. of Agric. & Consumer Servs., 586 So.2d 452 (Fla. 1st DCA 1991) (full compensation includes attorney's fees), review dismissed, 595 So.2d 556 (Fla.1992). In the usual case, a landowner facing the loss of land through eminent domain would consult an attorney. The attorney would then retain an appraiser to provide an independent evaluation. If the condemning authority made the "first written offer," at or near the landowner's appraisal, but far above its previously stated good faith estimate, the attorney would have achieved a benefit for the landowner, but not a benefit which would qualify for an award of fees. A few such forays would soon result in a decline in the number of attorneys willing to represent those facing the loss of property to the state or representation would be undertaken only if the landowner agreed to pay fees from the recovery. Either scenario would result in less than full compensation for those persons having land taken by eminent domain.
Fairness and logic requires that the value placed upon land by the condemning authority at the time it takes legal title to land should be a starting point for a determination *999 of the benefits achieved. Accordingly, I would hold that the estimate of value once deposited in the court registry constitutes a written offer for calculation of fees when examined in the statutory context for quick takings.